**QUIXTAR INC., Petitioner,**

v.

**SIGNATURE MANAGEMENT TEAM, LLC, d/b/a Team, Respondent.**

No. 09–0345.

Supreme Court of Texas.

July 2, 2010.

Richard E. Griffin, Jackson Walker, L.L.P., Houston, David T. Moran, David C. Myers, Mark R. Steiner, Jackson Walker L.L.P., Dallas, Brian S. Loughmiller, Loughmiller Higgins, P.C., McKinney, for Petitioner.

Clyde M. Siebman, Bryan Hillary Burg, Susan Marie Fisher, Siebman Reynolds Burg Phillips & Smith LLP, Sherman, Homer B. Reynolds, Siebman Reynolds Burg Phillips & Smith LLP, Plano, William M. Boyd, Boyd Veigel, P.C., McKinney, Wm. Charles Bundren, Wm. Charles Bundren & Associates, P.C., Frisco, for Respondent.

PER CURIAM.

In this case, the trial court dismissed a lawsuit filed in Collin County, Texas be-

tween two Michigan businesses based on common law forum non conveniens. The court of appeals reversed the dismissal, holding that the trial court abused its discretion. It agreed that the proposed forum, Michigan, was available and adequate for the lawsuit, but held that the defendant did not meet its burden to show that the private and public interest factors of the forum non conveniens analysis strongly weighed in favor of dismissal. The defendant appealed to this Court. Because the trial court did not abuse its discretion, we reverse the court of appeals' judgment.

This dispute arose between Quixtar Inc. and Signature Management Team, LLC, d/b/a Team ("Team"). Quixtar is a Virginia corporation with a principal place of business in Michigan. Team is a limited liability company organized in Nevada with a principal place of business in Michigan. Quixtar, a successor to Amway Corporation, is a multi-level marketing corporation that sells products through a network of individual business owners (IBOs). IBOs increase revenue by recruiting new IBOs for Quixtar, and Quixtar promulgates rules regulating IBO recruitment to ensure compliance with Federal Trade Commission regulations pertaining to multi-level marketing businesses.

Team is a "tools company" that sells marketing tools, self-help books, seminars, and motivational speaker appearances to IBOs to assist them in developing their businesses. Quixtar also owns a training system and sells similar tools to IBOs, making it a direct competitor with Team. Leading up to this dispute, Quixtar alleged that Team taught IBOs improper and potentially illegal business-building techniques that put Quixtar's entire business at risk. The entities met at Quixtar's headquarters in Michigan on August 9, 2007, to discuss Team's alleged noncompliance with Quixtar's rules and potential remedial measures. Quixtar alleges that Team threatened to file a "storm" of litigation initiated by Team-affiliated IBOs if Quixtar did not capitulate to certain demands, such as waiving non-compete provisions in its contract so that Team founders Orrin Woodward and Chris Brady could recruit IBOs for a separate business endeavor. When they did not resolve their disagreements, Quixtar terminated Woodward and Brady's IBO contracts and revoked Team's authorization to sell training materials. The same day, Team-affiliated IBOs filed a class-action lawsuit against Quixtar in California. Over the next several days, Quixtar sent e-mails to its IBOs. In the e-mails, Quixtar explained the terminations and warned certain Team-affiliated IBOs that their businesses would also be terminated if they continued using Team products. Team-affiliated IBOs filed seventeen lawsuits, including seven in Michigan. Michigan courts repeatedly denied the injunctive relief requested by the IBOs, but eventually a court in Collin County, Texas issued a temporary restraining order against Quixtar to prevent Quixtar from initiating any adverse action against Team-affiliated IBOs.

Team initiated suit in Collin County, Texas on September 4, 2007, alleging that Quixtar abused its power by interpreting rules governing IBOs to restrain Team's trade and business with certain IBOs located in Collin County. It alleges that Quixtar's e-mail communications were part of its basis for commencing suit. Quixtar filed a motion to dismiss based on the common law forum non conveniens doctrine, arguing that the suit arose from a business dispute centered in Michigan that had no substantial connection to Texas. At the evidentiary hearing on Quixtar's motion to dismiss, the trial court heard testimony from three Team-affiliated IBOs and the General Counsel of Quixtar's par-

ent company, Alticor. It granted the motion to dismiss.

The court of appeals held that the trial court abused its discretion by granting the forum non conveniens dismissal. It reasoned that "the plaintiff's choice of forum must be respected unless evidence shows the private-interest and public-interest factors *strongly* favor dismissal in favor of another forum." 281 S.W.3d 666, 674 (Tex.App.-Dallas 2009, pet. granted). Though the court agreed that Michigan was an available and adequate forum, it held that Quixtar's "evidentiary showing under the private-interest factors was weak" and that it "did not show that the public-interest factors, on the whole, strongly favor Michigan as a more appropriate forum for Team's lawsuit than Texas." *Id.*

Quixtar argues that the trial court did not abuse its discretion and that the court of appeals erred in reversing the forum non conveniens dismissal. It asserts that the court of appeals' analysis was flawed, imposing an excessive burden of proof on Quixtar because (1) a nonresident plaintiff's forum choice deserves substantially less deference than a resident plaintiff's, and (2) it improperly required Quixtar to prove that all of the public and private interest factors "strongly" favored dismissal. We address each contention.

■■■ The *"forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). "It may be reversed only when there has been a clear abuse of discretion; where the court has considered all the relevant public and private interest factors, and where its balancing of these factors is reasonable, its discretion deserves substantial deference." *Id.* A trial court commits an abuse of discretion when it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). And the "mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion occurred." *Downer,* 701 S.W.2d at 242.

■■■ A defendant seeking forum non conveniens dismissal "ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). However, in *In re Pirelli Tire, L.L.C.,* this Court explained that the "forum-non-conveniens doctrine generally affords substantially less deference to a nonresident's forum choice." 247 S.W.3d 670, 675 (Tex. 2007) (plurality opinion) (citing *Reyno,* 454 U.S. at 255–56, 102 S.Ct. 252 (upholding dismissal of nonresident plaintiff's forum choice as reasonable—despite existence of an important American interest to prevent faulty manufacturing—where evidence of private interest factors pointed in both directions and public interest factors weighed against the plaintiff's forum choice); *Owens Corning v. Carter,* 997 S.W.2d 560, 570 (Tex.1999)); *see also Sinochem,* 549 U.S. at 430, 127 S.Ct. 1184 (explaining that "the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate in such cases is less reasonable" (quotations omitted)). Obviously, this does not mean that a plaintiff's choice of forum deserves no deference. *Sinochem,* 549 U.S. at 430, 127 S.Ct. 1184. But that a plaintiff is not a Texas resident speaks directly to a defendant's burden. *See id.; In re Volkswagen of Am., Inc.,* 545 F.3d 304, 314 n. 10 (5th Cir.2008).

Team argues that we should not defer to *Pirelli*'s "less deference" language because *Pirelli* is a plurality opinion and only addressed Texas's forum non conveniens statute. But *Pirelli*'s significance should not be dismissed so easily. First, while it addressed Texas's forum non conveniens statute and not the common law doctrine, the statute has "deep roots in the common law." *Pirelli*, 247 S.W.3d at 675. The *Pirelli* plurality cites to *Reyno*, a common law forum non conveniens case, for the proposition that a nonresident plaintiff's forum choice deserves "substantially less deference." *Id.* (citing *Reyno*, 454 U.S. at 255–56, 102 S.Ct. 252). Also, the fact that *Pirelli* is a plurality opinion does not mean it is of no significance. A majority of the Court agreed that the public and private interest factors from the common law forum non conveniens analysis—known as the *Gulf Oil* factors—would merit dismissal on common law forum non conveniens grounds and that a nonresident plaintiff's forum choice does not require "the same balancing of interests" as a resident plaintiff's. *See id.* at 680 (Willett, J., concurring) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)) (applying the former statute which only enumerated a balancing test for resident plaintiffs' forum choices). Therefore, *Pirelli* directly addresses issues in this case.

In addition to *Pirelli*, precedent from the United States Supreme Court supports the proposition that a defendant's "heavy burden" applies with "less force" when seeking a forum non conveniens dismissal to a nonresident plaintiff's forum choice. *See Sinochem*, 549 U.S. at 430, 127 S.Ct.

1184; *Reyno*, 454 U.S. at 255–56, 102 S.Ct. 252; *see also Swift & Co. Packers v. Compania Colombiana del Caribe, S.A.*, 339 U.S. 684, 697, 70 S.Ct. 861, 94 L.Ed. 1206 (1950) (distinguishing between the forum non conveniens analysis for a plaintiff who is a United States citizen and one who is foreign). Because Texas's forum non conveniens statute governs in most situations, we rarely address the common law doctrine. However, we regularly consider United States Supreme Court precedent in both our common law and statutory forum non conveniens cases. *See Pirelli*, 247 S.W.3d at 675, 677–79; *In re Smith Barney, Inc.*, 975 S.W.2d 593, 596 (Tex.1998); *Exxon Corp. v. Choo*, 881 S.W.2d 301, 305 (Tex.1994); *Flaiz v. Moore*, 359 S.W.2d 872, 874 (Tex.1962).

Here, the court of appeals acknowledged *Pirelli*, but dismissed it as a plurality opinion and followed language from its opinion in *Sarieddine v. Moussa*, 820 S.W.2d 837, 840 (Tex.App.-Dallas 1991, writ denied). In that case, the court, relying on language from *Gulf Oil*, declared that courts should rarely disturb a plaintiff's forum choice "unless the balance is strongly in favor of the defendant." *Id.* (quoting *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839). The quote from *Gulf Oil* is accurate, but the plurality opinion in *Pirelli* and numerous subsequent United States Supreme Court cases apply the "less deference" standard to nonresident plaintiffs' forum choices. *See, e.g., Reyno*, 454 U.S. at 255–56, 102 S.Ct. 252; *Pirelli*, 247 S.W.3d at 675.

■■ Team is not a Texas resident.[1] It is organized in Nevada with a principal

---

1. Team argues it should be considered a Texas resident because it is registered to do business and has numerous contacts here. However, Team was not registered to do business in Texas until *after* it filed suit against Quixtar in Collin County. Even so, Team's authority to do business in Texas does not govern residency. *See In re Smith Barney, Inc.*, 975 S.W.2d 593, 596 (Tex.1998) ("Corporations' power to sue and be sued says little about their right to do so, and absolutely nothing

place of business—like Quixtar—in Michigan. It claims a connection to Texas because Team-affiliated IBOs reside here, but only one of these IBOs testified to material facts of firsthand knowledge at the evidentiary hearing in the trial court. There are Team-affiliated IBOs all over the world—including in Michigan—that could supply substantially the same testimony. As a result, the presumption that Team filed in Texas as a matter of convenience applies with less force and deserves "substantially less deference" than it would if Team were a Texas resident. *See Pirelli*, 247 S.W.3d at 675; *see also Carter*, 997 S.W.2d at 582 (recognizing the Legislature's legitimate interest in preventing forum-shopping through retroactive application of an amendment to the forum non conveniens statute). There is a connection to Texas when one of the parties is a Texas resident and at least some justification for the burden to Texans of providing judicial resources for the dispute. There is also normally less concern about forum-shopping when a Texas plaintiff files suit in a Texas court. *See Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.*, 955 F.2d 368, 373 (5th Cir.1992). Therefore, Quixtar's burden of proof is less stringent than if Team were a Texas resident. And the court of appeals' reliance on *Sarieddine* erroneously influenced its entire forum non conveniens analysis by placing an excessive burden of proof on Quixtar.[2]

■ Next, Quixtar alleges that the court of appeals further placed an excessive burden of persuasion on it, contrary to our opinion in *In re General Electric Co.*, by requiring it to prove that each of the *Gulf*

*Oil* factors strongly favored dismissal. *See generally In re Gen. Elec. Co.*, 271 S.W.3d 681 (Tex.2008). Team argues that the court of appeals did not place an extraordinary burden of proof on Quixtar, but that Quixtar was simply unable to meet its burden of proof to justify a forum non conveniens dismissal in the trial court. It also argues that *General Electric* does not apply because it is a statutory forum non conveniens case. We agree that *General Electric* does not offer much guidance because there is minimal discussion relevant to common law forum non conveniens. *See id.* We conclude that the court of appeals did improperly require Quixtar to prove that each *Gulf Oil* factor strongly favored dismissal, an extremely weighty burden given the circumstances of this case.

The "central focus of the *forum non conveniens* inquiry is convenience." *Reyno*, 454 U.S. at 249, 102 S.Ct. 252. The well-known *Gulf Oil* factors direct courts to consider both public and private interest considerations in forum non conveniens dismissals. *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. 839. Private considerations include: (1) the "relative ease of access to sources of proof"; (2) the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses"; (3) the "possibility of view of premises, if view would be appropriate to the action"; (4) the "enforceability of a judgment" once obtained; and (5) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508, 67 S.Ct. 839. Public considerations include: (1) "[a]dministrative difficulties . . . for courts when litigation is piled up in congested

---

about the restrictions of the *forum non conveniens* doctrine.").

**2.** While we disagree with the court of appeals' reliance on the "strongly favors" standard

from *Sarieddine* as applied to nonresident plaintiffs' forum choices, we express no opinion on the validity of the holding in that case.

centers instead of being handled at its origin"; (2) the burden of "jury duty . . . that ought not to be imposed upon the people of a community which has no relation to the litigation"; (3) "local interest in having localized controversies decided at home"; and (4) avoiding conflicts of law issues. *Id.* at 508–09, 67 S.Ct. 839.

In *Reyno,* the United States Supreme Court purposefully refused to "lay down a rigid rule to govern discretion" in these cases because " '[e]ach case turns on its facts.' " 454 U.S. at 249, 102 S.Ct. 252 (quoting *Williams v. Green Bay & W.R.R. Co.,* 326 U.S. 549, 557, 66 S.Ct. 284, 90 L.Ed. 311 (1946)). If "central emphasis were placed on any one factor, the forum non conveniens doctrine would lose much of the flexibility that makes it so valuable." *Id.* at 249–50, 102 S.Ct. 252. In the same manner, requiring an "extensive investigation" to produce evidence for the dismissal hearing "would defeat the purpose" of the request for this type of dismissal altogether. *Id.* at 258, 102 S.Ct. 252 (explaining that it is not necessary for defendants to "submit affidavits identifying witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum"). Obviously, there needs to be enough information "to enable the District Court to balance the parties' interests." *Id.* at 258–59, 102 S.Ct. 252 (holding that an affidavit identifying witnesses the defendant planned to call if the trial was held in Scotland was sufficient proof to satisfy the defendants' forum non conveniens burden; the affidavits presented did not identify the substance of each proposed witnesses' testimony). And we do not require detailed quantification of costs. *See id.; see also Volkswagen,* 545 F.3d at 317 (dismissing the need to quantify travel expenses because of the "obvious conclusion" that travel distance from home means time away from work, food and lodging expenses, and

similar costs) (quoting *In re Volkswagen AG,* 371 F.3d 201, 204–05 (5th Cir.2004)).

Quixtar presented sufficient evidence for the trial court to determine that the private interest factors weighed in favor of dismissal. Both entities' principal places of business are in Michigan; a key meeting leading up to this dispute occurred in Michigan; and the vast majority of evidence that would be produced and key witnesses that would testify at trial are located in Michigan. In contrast, Team argues that the case should proceed to trial in Collin County because Team-affiliated IBOs reside there whose testimony is material for trial. At the evidentiary hearing, Team presented evidence of three IBOs who testified that it would be inconvenient for them to travel to Michigan for trial, only one of which appeared to have material, firsthand knowledge of events leading up to Team filing this lawsuit.

Despite recognizing that Quixtar identified sixteen important witnesses residing in Michigan and that an "overwhelming majority" of records that it intended to use in the lawsuit were maintained in Michigan, the court of appeals determined the evidentiary showing was "weak." 281 S.W.3d at 673–74. It held that Quixtar did not identify witnesses unwilling to appear in Texas that could not be compelled by process to do so, that Quixtar did not *quantify* the additional expense for procuring attendance of its witnesses, and that the location of Quixtar's records was not "probative evidence" because it did not demonstrate the volume or how difficult it would be to transport them to Texas. *Id.*

■ However, parties do not need to quantify the extra costs of litigating in an undesirable forum in detail for a forum non conveniens dismissal. They only must provide enough information for the trial court to weigh the interests at hand. The

court of appeals inappropriately disregarded Quixtar's evidence about the location of its witnesses and records. *Reyno,* 454 U.S. at 258–59, 102 S.Ct. 252. It is an "obvious conclusion" that costs will increase when witnesses travel great distances. *Volkswagen,* 545 F.3d at 317 (quoting *Volkswagen AG,* 371 F.3d at 205). Likewise, Quixtar could have but did not need to quantify the expense or difficulty of transporting its records. We conclude that there was sufficient evidence before the trial court for it to determine that the private interest factors weighed in favor of dismissal.

The court of appeals also held that the public interest factors did not "on the whole, strongly favor Michigan as a more appropriate forum for Team's lawsuit than Texas." 281 S.W.3d at 674. It conceded: "Michigan has a greater interest in seeing that Team is compensated for any injuries"; "[a]rguably, it would be more fair to require Michigan courts and jurors to bear the time and expense of litigating a business dispute between two businesses that are essentially Michigan enterprises"; and "[t]o the extent the controversy has a center of gravity, that center appears to be in Michigan, where a key meeting between Team and Quixtar personnel took place and where Quixtar took the actions that have allegedly resulted in injury to Team." *Id.* But the court dismissed the relevance of these facts because both "Texas and Michigan have an interest in protecting their citizens from wrongful conduct by Quixtar." *Id.* It also apparently reasoned that Quixtar's failure to demonstrate any choice of law issues or docket congestion problems weighed against Michigan as a more favorable forum.

 Ultimately, the court of appeals recognized the trial court's legitimate dismissal, but did not give the trial court's decision appropriate deference. There was sufficient evidence to uphold the dismissal, and the trial court did not abuse its discretion. The court of appeals mechanically re-weighed the *Gulf Oil* factors under the scope of an excessive burden of proof. But, forum non conveniens dismissals are within the sound discretion of the trial court and involve weighing various factors that may be difficult to quantify. We decline to establish a formulaic application for a trial court's forum non conveniens determination.

The trial court's dismissal in this case was not an abuse of discretion in light of the evidence before it and Quixtar's burden of proof. For these reasons, and without hearing oral argument, we reverse the court of appeals' judgment and reinstate the trial court's dismissal. *See* TEX.R.APP. P. 59.1.

Justice HECHT and Justice LEHRMANN did not participate in the decision.