**Opinion issued May 9, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00056-CV

————————————

**BENZ GROUP, LYNX PETROLEUM, LTD., ROBERT
SAMUEL BRASWELL, IV, FORTUNE JAUBERT ALEXANDER,
TOM SCHMIDT, AND BENZ LIQUIDATION, LLC, Appellants**

**V.**

**FLÁVIO MACH BARRETO, Appellee**

---

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Case No. 2011-26166**

---

## O P I N I O N

An international business dispute led the Benz Group, Lynx Petroleum, Ltd.,

Robert Samuel Braswell, IV, Fortune Jaubert Alexander, Tom Schmidt, and Benz

Liquidation, LLC (collectively, the brokers) to sue Flávio Mach Barreto. The

brokers claim that Barreto and his employer, ETX Servicos De Perfuraçao et Sondagem, LTDA refused to pay them a commission for their help in securing an oil exploration contract in Brazil. Barreto, a Brazilian resident, moved to dismiss the claims based on the common law doctrine of forum non conveniens. The trial court granted the motion, and the brokers appeal. Because the trial court acted within its discretion in dismissing the case on forum non conveniens grounds, we affirm.

### Background

In 2007, Petróleo Brasileiro S.A. (Petrobras), Brazil's state-owned oil company, solicited public bids for an onshore oil and gas drilling project in Brazil. Petrobras selected Brazilian drilling rig supplier IROME, a company headquartered in Hong Kong, for the project. Petrobras's contract with IROME required it to hire a Brazilian company to operate the rigs and provide oilfield services at the drilling site. IROME selected local Brazilian company ETX to provide those services. Although the petition names ETX as a defendant, it was never served. All of ETX and IROME's meetings concerning the project took place in Rio de Janeiro, Brazil, from late summer of 2007 through spring 2008.

ETX and IROME met with Petrobras about the contract during the same period. These meetings also took place in Brazil, and culminated in a contract between ETX and Petrobras to provide oilfield services for a Petrobras drilling

2

project. The contract designates Brazilian law as governing, and it contains a clause designating the Brazilian courts as the proper forum for any disputes arising out of the agreement.

In late 2008, ETX expanded its role in the Petrobras project. It took over IROME's role, providing inspection, financing, importing, and delivery services for rigs. ETX performed services under the Petrobras contract for the ensuing eight years and continues to do so.

The brokers allege that they approached Barreto and ETX about becoming involved in the Petrobras drilling project, and then formed an oral partnership agreement with Barreto and ETX, under which the brokers agreed to assist in securing the contract for ETX and to assume financial and operating risks relating to the project, in exchange for four percent of the gross revenues that ETX received under the project.

Notable non-Brailians who allegedly were instrumental in obtaining the initial Petrobras contract for ETX include:

- Francisco Acosta, Ecuador's former Minister of Energy and a resident of Ecuador, who had communications with ETX;

- Lynx Petroleum, Ltd., an oilfield services limited partnership registered in Ecuador,

- James Alexander, an American who was living in Brazil, now deceased, who attended meetings in Brazil, possibly on behalf of Benz Group, Ltd., a Cayman Islands limited partnership; and

3

- Fortune Jaubert Alexander, a resident of London, England, who assisted in obtaining financing.

The group of brokers includes three Texas residents: Robert Samuel Braswell, IV, Tom Schmidt, and Benz Liquidation, LLC. The brokers' pleadings allege that, under the oral partnership agreement, Benz and Lynx are each owed a one-half share of the proceeds due to the brokers.

## Discussion

### I. Standard of review

"[F]orum non conveniens dismissals are within the sound discretion of the trial court and involve weighing various factors that may be difficult to quantify." *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 35 (Tex. 2010). We accord a trial court's decision great deference and reverse only if the record shows a clear abuse of discretion. *Quixtar*, 315 S.W.3d at 31, 35; *Vinmar Trade Fin., Ltd. v. Util. Trailers de Mexico, S.A.*, 336 S.W.3d 664, 673–74 (Tex. App.—Houston [1st Dist.] 2010, no pet.). "A trial court abuses its discretion if its decision 'is arbitrary, unreasonable, and without reference to guiding principles.'" *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997) (quoting *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex.1996)); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). The "mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of

4

discretion occurred." *Quixtar*, 315 S.W.3d at 31 (quoting *Downer*, 701 S.W.2d at 242).

## II.    *Applicable law*

Courts apply the equitable doctrine of forum non conveniens when necessary to prevent the imposition of an inconvenient jurisdiction on a litigant. *Quixtar*, 315 S.W.3d at 33 (Tex. 2010) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249, 102 S. Ct. 252, 262 (1981)). A trial court may, in its discretion, dismiss a case even when contacts between the defendant and the forum state exist that may confer personal jurisdiction upon the trial court, if the case itself has no significant connection to the forum. *In re Omega Protein, Inc.*, 288 S.W.3d 17, 21 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 675 (Tex. 2007) (plurality op.)).

To determine whether dismissal is appropriate, a trial court should apply the test that the United States Supreme Court established in *Gulf Oil Corp. v. Gilbert*. 330 U.S. 501, 67 S. Ct. 839 (1947), *superseded on other grounds by statute as recognized in Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2, 114 S. Ct. 981, 986 n.2 (1994). First, the party seeking dismissal must demonstrate that the proposed alternate forum is available and adequate. *Quixtar*, 315 S.W.3d at 33 (citing *Gulf Oil*, 330 U.S. at 508–09, 67 S. Ct. at 843). It also must show that the litigants' private interests weigh in favor of the alternate forum and that a dismissal

for forum non conveniens serves the public interest. *See id.* If not, then a trial court should deny the motion to dismiss the case. *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184, 1191 (2007); *see Gulf Oil*, 330 U.S. at 508, 67 S. Ct. at 843 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). A plaintiff's choice of forum, however, is not dispositive. *Piper Aircraft*, 454 U.S. at 255 n.23, 102 S. Ct. at 266 n.23; *see DTEX LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 795 (5th Cir. 2007). "[I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft*, 454 U.S. at 255 n.23, 102 S. Ct. at 266.

## III.    *Scope of the record*

Before we review the trial court's application of these factors, we address the scope of the record before us—in particular, whether we include in our review the evidence proffered with the brokers' motion for new trial. The brokers contend that the trial court erred in excluding that evidence from its consideration.

To prevail on a motion for a new trial based on evidence not previously before the trial court, the movant must satisfy the court that: (1) the evidence has come to light since the trial or hearing; (2) the movant's failure to discover the evidence before this point was not due to a lack of due diligence; (3) the newly discovered evidence is not cumulative; and (4) the evidence is so material that it

6

would probably cause a different result. *Chapman v. Abbot*, 251 S.W.3d 612, 620 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983), *overruled on other grounds by Moritz v. Preiss*, 121 S.W.3d 715, 721 (Tex. 2003)); *see* TEX. R. CIV. P. 324(b)(1). Like the forum non conveniens decision itself, we review the trial court's denial of a motion for new trial for an abuse of discretion. *Chapman*, 251 S.W.3d at 620.

The brokers did not explain their delay in proffering the new evidence—which consists of affidavits executed by Braswell and Schmidt—before the submission date of the motion for dismissal based on forum non conveniens. The affidavits themselves show the contrary: in them, the witnesses recite historical facts concerning communications that Braswell and Schmidt had with Barreto, ETX, and others relating to the alleged commission agreement. Without an explanation of good cause for the delay, the trial court was within its discretion in declining to reconsider its ruling on the motion. *See id.*; *Xenos Yuen v. Fisher*, 227 S.W.3d 193, 204–05 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that trial court did not abuse its discretion in denying motion for new trial because appellant failed to demonstrate that it was not through want of diligence that he did not obtain new evidence sooner). As that evidence was not before the trial court when it dismissed the case, we do not consider it in our appellate review of the trial court's forum non conveniens ruling.

7

## IV.    Analysis

### A.    Adequate alternative forum

A viable alternative forum exists when the entire case and all of the parties can appear within the jurisdiction of the proposed forum. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (quoting *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1165 (5th Cir. 1987)); *Vinmar Trade Fin., Ltd.*, 336 S.W.3d at 674.

Barreto satisfied his burden to show that Brazil is an available forum. Both defendants are residents of Brazil and thus subject to jurisdiction in Brazil, and the contract essential to calculating the brokers' damages is a Brazilian drilling contract that is governed by Brazilian law. It subjects the contracting parties to the jurisdiction of Brazilian courts. Barreto showed that Brazil is an adequate forum for resolution of this dispute, and the brokers do not contend otherwise.

### B.    Private and public interests

Based on the evidence before it, the trial court could have determined that the the suit involves the claims of two foreign corporate entities against a Brazilian corporate entity about a commercial transaction in Brazil. The brokers seek to hold Barreto liable for his alleged conduct as ETX's employee. The petition names only Benz, a Cayman Islands limited partnership, and Lynx, an Ecuadorean corporate entity, as entitled to equal shares of the four percent gross profits owed under the

8

alleged partnership agreement. This determination informs our review of the trial court's evaluation of the private and public interest evidence before it.

For analyzing whether the litigants' private interests weigh in favor of the alternate forum, *Gulf Oil* identified the following factors to consider: (1) the litigant's interests in such matters as which forum would provide easiest access to sources of proof; (2) the cost of obtaining the presence of witnesses; (3) the availability of process to compel the attendance of unwilling witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) any other practical factors that make trial expeditious and inexpensive. *Gulf Oil*, 330 U.S. at 508, 67 S. Ct. at 843; *Quixtar*, 315 S.W.3d at 33. Barreto showed the trial court that: (1) the alleged broker agreement pertains to a contract negotiated and formed in Brazil for the provision of services for an ongoing project located in Brazil; (2) most of the meetings and communications concerning the relevant contracts also occurred in Brazil; (3) most of the parties and potential witnesses are located outside of Texas; the majority are in Brazil, and some are in Ecuador and Hong Kong; and (4) many of the relevant documents are written in Portuguese, and litigation in Texas would require the additional expense of their translation into English. *See Vinmar Trade Fin., Ltd.*, 336 S.W.3d at 677–78 (factoring cost of document translation into balance-of-interest analysis).

9

In *Quixtar*, a case which, like this case, arose out of a commercial dispute, the Supreme Court identified similar factors that weighed in favor of the trial court's forum non conveniens dismissal:

> Both [the corporate plaintiff and Quixtar's] principal places of business are in Michigan; a key meeting leading up to this dispute occurred in Michigan; and the vast majority of evidence that would be produced and key witnesses that would testify at trial are located in Michigan. In contrast, . . . only one of [the plaintiff's individual business owners] appeared to have material, firsthand knowledge of events leading up to Team filing this lawsuit.

315 S.W.3d at 34. The Court emphasized that Quixtar was not required to quantify the extra costs and burdens of trying the case in Texas. *Id.* at 35. Barreto's similar evidence provides a basis for the trial court to have exercised its discretion in favor of dismissal.

In weighing the public interest, courts consider the potential for administrative problems and docket congestion resulting from transfers of cases to metropolitan centers as well as concerns involving the courts of one state applying foreign law, particularly when the foreign law so differs from the law of the forum that the courts of the forum would find it difficult or impossible to administer and enforce. *See Flaiz v. Moore*, 359 S.W.2d 872, 874–75 (Tex. 1962); *Griffith v. Griffith*, 341 S.W.3d 43, 56 (Tex. App.—San Antonio 2011, no pet.); *Boots v. Lopez*, 6 S.W.3d 292, 294–95 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). In connection with those factors, Barreto showed that the United States

10

and Brazil have no treaty that would allow for enforcement of a United States judgment in Brazil. The underlying agreements, and potentially other relevant documents, would also require application of Brazilian law.

The public interest factors that supported the forum non conveniens dismissal in *Vinmar* similarly supports the trial court's exercise of discretion in this case. In *Vinmar*, this court upheld the forum non conveniens dismissal of a suit brought against two Mexican corporations by an international company headquartered in Texas, reasoning that:

> Texas jurors do not have a strong interest in resolving a dispute arising from Mexican business transactions, contracts executed in Mexico, and alleged torts emanating from Mexio directed toward a multinational corporation that thrives on conducting business in emerging international markets. Significantly, this controversy arose in Mexico and primarily involves Mexican residents.

336 S.W.3d at 679–80. Barreto adduced evidence that Brazil was the main location for the negotiations, agreements, alleged misdeeds, and ongoing business relevant to the dispute.

The brokers urge us to apply an absolute rule that Texas resident plaintiffs are entitled to their choice of forum, relying on this court's opinion in *Easter v. Technetics Mgmt. Corp.*, 135 S.W.3d 821 (Tex. App.—Houston [1st Dist.] 2004, pet. granted, judgm't vacated w.r.m.). We are not persuaded that is the law in Texas. First, the Texas Supreme Court granted Technetics' petition for review in that case, the parties reached a settlement, and, according to the parties' agreement,

11

the Texas Supreme Court vacated that decision. Intervening decisions have not adopted the rule in *Easter* as part of the common law for commercial disputes. Section 71.051 of the Civil Practice and Remedies Code, considered in *Easter*, is a statutory adaptation of forum non conveniens, but it applies only to actions for personal injury or wrongful death. *See generally* TEX. CIV. PRAC. & REM. CODE ANN. Ch. 71 ("Wrongful Death; Survival; Injuries Occurring Out of State"), § 71.051(b) ("If a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action *to which this section applies* would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens . . . ."), and § 71.051(h)(2) (defining "plaintiff" as party seeking recovery of damages for personal injury or wrongful death"). Thus, the absolute rule of section 71.051(e), which forecloses a statutory avenue for forum non conveniens dismissal if the plaintiff is a resident suing for wrongful death or personal injury, does not apply to commercial cases like this one.

Under the common law, a resident plaintiff's forum choice as deserves deference all else being more or less equal, but that choice does not foreclose a defendant from demonstrating that the private and public interest factors favor dismissal when another forum's interests predominate. *See Quixtar*, 315 S.W.3d at 31–33 (discussing differences in burden on resident and nonresident plaintiffs); *see*

12

*also Akerblom v. Ezra Holdings Ltd.*, No. 12-20182, 2013 WL 363112, at *9–10 (5th Cir. Jan. 28, 2013) (affirming district court's forum non conveniens dismissal of suit brought by Texas resident against former Singaporean employer based on agreement executed while plaintiff was residing in Singapore); *Vinmar*, 336 S.W.3d at 672 (reiterating that "[f]orum non conveniens is an equitable doctrine" and upholding trial court's forum non conveniens dismissal of suit brought against Mexican entities by Cayman Island company headquartered in Houston).

In *Vinmar*, we endorsed the Fifth Circuit's recognition of the expansion of international commerce and its effect on balancing the equities in forum convenience:

> In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.

*DTEX, LLC*, 508 F.3d at 795, *quoted in Vinmar*, 336 S.W.3d at 673. The trial court's ruling reflects this recognition. We hold that the trial court acted within its discretion in ruling that the balance of the equities here weigh in favor of dismissal.

**Conclusion**

We affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Massengale.