

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00363-CV

———————————————

IN THE MATTER OF B.R.

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-113215-20

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I.  Introduction

Appellant B.R., who was adjudicated delinquent at age sixteen, appeals the sex-offender registration order that was rendered after he turned eighteen.  In two issues, he argues that the juvenile court lacked jurisdiction to render the sex-offender registration order after he turned eighteen and that the juvenile court abused its discretion by rendering such order because, among other arguments, the evidence is factually insufficient.  Because the plain language of the statute states that a juvenile court has jurisdiction to render a sex-offender registration order after a juvenile turns eighteen and because we hold that the juvenile court did not abuse its discretion by rendering the order, we affirm.

## II.  Background

In October 2020, the juvenile court found that sixteen-year-old B.R. had engaged in conduct at the age of thirteen that, if committed by an adult, would have constituted the felony offenses of aggravated sexual assault of a child (two counts) and of sexual performance of a child under fourteen years old (one count).  The juvenile court (1) found that B.R. was a child in need of rehabilitation and that it was in his best interest that he be placed on probation until his eighteenth birthday and (2) ordered that he successfully complete a licensed sex-offender treatment program.  At that time, the juvenile court deferred sex-offender registration for B.R.

On what was intended to be his last day of sex-offender counseling, B.R. tested positive for marijuana. Shortly thereafter, in March 2022, B.R. was arrested for another sexual charge: public lewdness. B.R. was then unsuccessfully discharged from sex-offender treatment.

In April 2022, B.R. turned eighteen.

One week after B.R.'s eighteenth birthday, the State filed a motion to order sex-offender registration. In response, B.R. filed a "Motion To Retain Exemption From Sex[-]Offender Registration." Both B.R. and the State later filed briefs in support of their motions. The juvenile court held an evidentiary hearing and granted the State's motion to register. B.R. then perfected this appeal.

### III. Jurisdiction to Render Sex-Offender Registration Order

In his first issue, B.R. argues that pursuant to Texas Code of Criminal Procedure Article 62.352(c), the juvenile court lacked jurisdiction to render its order requiring him to register as a sex offender after he turned eighteen.[1] B.R. recognizes that we have previously analyzed this statute and have held that "the juvenile court's jurisdiction to reconsider a deferred[-]registration decision does not terminate following the completion of treatment." *See In re D.K.*, 589 S.W.3d 861, 865 (Tex. App.—Fort Worth 2019, pet. denied). He argues that

---

[1]B.R. acknowledges that based on his "adjudication for delinquent, sexual conduct, he was required to register as a sex offender unless the juvenile court chose to defer a decision on whether to require his registration."

3

[t]his [c]ourt should revisit its prior construction of [A]rticle 62.352(c), and after applying the appropriate principles of construction as urged here by B.R. and giving fair effect to the [Texas] Legislature's precise word choice within the statute as a whole,[2] this [c]ourt should now confirm that [A]rticle 62.352(c) does not extend jurisdiction for a juvenile court to order sex-offender registration after the juvenile reaches the age of majority in the single situation where the juvenile unsuccessfully completes [sex-offender] treatment.

Although this case differs from *D.K.* in that the juvenile in *D.K.* successfully completed a sex-offender treatment program, we see no need to reconsider our prior construction of Article 62.352(c) when the plain language of the statute provides a juvenile court with jurisdiction to order sex-offender registration after a juvenile's eighteenth birthday.

### A.     Standard of Review and Applicable Law

In *D.K.*, we set forth the standard of review and applicable law:

Appellant's argument presents a question of statutory interpretation that we review de novo. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). In construing statutes, our primary objective is to give effect to the legislature's intent. *Id.* We interpret statutes according to the language the legislature used, absent an absurd result or a context indicating a different meaning. *Id.*

Generally, a juvenile adjudicated delinquent for aggravated sexual assault is required to register as a sex offender with law enforcement authorities. Tex. Code Crim. Proc. Ann. arts. 62.001(5)(A), .051(a). But on a juvenile's request, the juvenile court must conduct a hearing to

---

[2]Specifically, B.R. contends that in *D.K.*, we failed to read Subsection (c) of Article 62.352 as a whole to afford proper meaning to each phrase within the context of the entire subsection, that we used an incorrect definition of "on" in our analysis of the statute, and that we rationalized our interpretation of the statute by opining that our interpretation was "sound policy." *See* 589 S.W.3d at 865.

determine whether the juvenile's and the public's interests require an exemption from registration. *Id.* art. 62.351(a). After the hearing, the juvenile court may render an order deferring a decision on whether to require registration until the respondent has completed treatment for the sexual offense as a condition of probation. *Id.* art. 62.352(b)(1).

*Id.* at 864.

Article 62.352(c) describes when a juvenile court may order sex-offender registration after initially deferring such registration:

If the court enters an order described by Subsection (b)(1) [deferring sex-offender registration "until the respondent has completed treatment for the respondent's sexual offense as a condition of probation"], *the court retains discretion and jurisdiction to require*, or exempt the respondent from, *registration under this chapter at any time during the treatment or on the* successful or *unsuccessful completion of treatment*, except that during the period of deferral, registration may not be required. Following successful completion of treatment, the respondent is exempted from registration under this chapter unless a hearing under this subchapter is held on motion of the prosecuting attorney, regardless of whether the respondent is 18 years of age or older, and the court determines the interests of the public require registration. Not later than the 10th day after the date of the respondent's successful completion of treatment, the treatment provider shall notify the juvenile court and prosecuting attorney of the completion.

Tex. Code Crim. Proc. Ann. art. 62.352(c) (emphasis added).

## B.    Analysis

As noted in the State's brief,

[B.R.'s] foundational contention that a juvenile court's jurisdiction expires once the juvenile becomes 18 years old relies heavily on *In re N.J.A.*, 997 S.W.2d 554 (Tex. 1999). That holding, which predated [the] enactment of Article 62.352, is no longer good law, as discussed by another decision relied upon by [B.R.] *See In re R.A.*, 465 S.W.3d 728, 735 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (and cases

5

cited therein).  In . . . *R.A.*, the court held that "the duty to register as a sex offender arises from Chapter 62, and R.A.'s duty to register or any exemption therefrom is not part of the disposition that terminated on R.A.'s eighteenth birthday." [*Id.*] at 736.

. . . .

The Texas Code of Criminal Procedure provides for ongoing jurisdiction for a juvenile court that has deferred decision on whether to require [sex-offender] registration.  Paragraphs (b)(1) and (c) of Article 62.352, read together, provide that a juvenile court may defer decision on requiring registration until the respondent has had the opportunity to complete sex[-]offender treatment without losing jurisdiction thereby. Tex. Code Crim. Proc. [Ann.] art. 62.352[(b)(1)], (c).  In cases of *successful* completion of treatment, the court may not require registration without first holding a hearing and determining that the public interest requires registration.  Tex. Code Crim. Proc. [Ann.] arts. 62.351, 62.352(c). [Record references and footnote omitted.]

As we highlighted above, the wording of Article 62.352(c) specifically states that juvenile courts retain jurisdiction to order sex-offender registration after initially deferring such registration, even if a juvenile is unsuccessful in completing sex-offender treatment: "*the court retains discretion and jurisdiction to require*, or exempt the respondent from, *registration under this chapter at any time during the treatment or on the* successful or *unsuccessful completion of treatment.*"  Tex. Code Crim. Proc. Ann. art. 62.352(c) (emphasis added).

Moreover, the cases that B.R. cites actually cut against his desired holding (i.e., that the offender who successfully completes treatment may be required to register as a sex offender after his eighteenth birthday but that the offender who unsuccessfully completes treatment is outside the juvenile court's jurisdiction).  For example, *In re*

6

*J.M.* dealt with the same scenario presented here: the juvenile court ordered a juvenile who had unsuccessfully completed a sex-offender treatment program to register after he turned eighteen, and the juvenile challenged the court's jurisdiction. No. 12-10-00159-CV, 2011 WL 6000778, at *2–3 (Tex. App.—Tyler Nov. 23, 2011, no pet.) (mem. op.). The Tyler Court of Appeals explained its reasoning for holding that the juvenile court had jurisdiction:

> As the attorney general has noted, the statute does not specifically address the unsuccessful completion of treatment. *See* Op. Tex. Att'y Gen. No. GA–772 (2010).
>
> J.M. unsuccessfully completed treatment on or about September 15, 2009. The Texas Youth Commission discharged him on September 22, 2009. It is reasonable, at least in some scenarios, that a child would work on treatment until the end of his commitment to the youth commission or until the end of his community supervision. Therefore, whether the child can be said to have completed treatment or not completed treatment would not be known until the end of the child's commitment, which in at least some cases would be when the child reached the age of eighteen or nineteen. In such a situation, under J.M.'s reading of the statute, a juvenile court would be empowered to address the issue of registration only until the last day of the child's commitment. Or as applied to this case, because J.M. was not determined to have been unsuccessful with his treatment until approximately a week before the youth commission released him, the court would have been able to address the registration issue only within the very narrow window between the determination that he had failed to complete treatment and his nineteenth birthday.
>
> The legislature could have written the statute to require that result. However, the legislature would not have expanded or provided jurisdiction for the juvenile court to act if it intended the court to act only during a time when it already had jurisdiction. Instead, with Article 62.352, the legislature provided that the juvenile court's jurisdiction extended for the duration of treatment or to the end, successful or unsuccessful, of treatment. *See* Tex. Code Crim. Proc. Ann. art.

7

62.352(c). In this case, this additional grant of jurisdiction was sufficient to allow the juvenile court to address the State's motion following J.M.'s unsuccessful completion of treatment.

*Id.* (footnote omitted). Similarly, *R.A.*, which the State touched on in the portion of its brief that is set forth above, cites *J.M.* and reaches the same conclusion:

> Under the unambiguous language of [A]rticle 62.352(c), the [j]uvenile [c]ourt had discretion and jurisdiction to require, or exempt R.A. from registration under Chapter 62 "on the successful or unsuccessful completion of treatment." Tex. Code Crim. Proc. Ann. art. 62.352. The statute provides that, following successful completion of treatment, the respondent is exempted from registration as a sex offender unless a hearing under subchapter H of Chapter 62 is held on the motion of the prosecuting attorney. *See id.* Though [A]rticle 62.352(c) provides jurisdiction to the juvenile court to require registration or exempt from registration on the successful or unsuccessful completion of treatment, the statute does not mention a presumed outcome or motion by the State if the respondent unsuccessfully completes treatment. *See id.* Nonetheless, a sister court has held that, even if the respondent unsuccessfully completes treatment, the State still may move for a hearing under [A]rticle 62.352(c)[,] and the juvenile court still may require registration under this statute. . . . *J.M.*, 2011 WL 6000778, at *1–3. We agree that, even if R.A. unsuccessfully completed treatment, the State still may move for a hearing under [A]rticle 62.352(c) and [that] the juvenile court still may require registration under this statute. *See* Tex. Code Crim. Proc. Ann. art. 62.352(c); . . . *J.M.*, 2011 WL 6000778, at *1–3.

465 S.W.3d at 737–38. The *R.A.* court upheld a sex-offender registration order that was issued when R.A. was eighteen. *Id.* at 732, 738, 745.

Based on the plain language of the statute, we see no reason to reach a different conclusion than that reached in *J.M.* and *R.A.* Accordingly, we hold that the juvenile court had jurisdiction to render the order requiring B.R. to register as a sex offender after he turned eighteen. We therefore overrule B.R.'s first issue.

## IV. No Abuse of Discretion in Rendering Sex-Offender Registration Order

In his second issue, B.R. contends that the juvenile court abused its discretion by ordering him to register as a sex offender. B.R. makes a variety of arguments within his second issue; we reject each for the reasons set forth below.

### A.    Burden of Proof and Standard of Review

To avoid sex-offender registration, the juvenile bears the burden to show by a preponderance of the evidence (1) that protection of the public is not increased by registration or (2) that any potential increase in protection of the public is clearly outweighed by the anticipated substantial harm to the juvenile and the juvenile's family that would result from registration. *In re Z.P.H.*, No. 02-13-00188-CV, 2014 WL 670203, at *2 (Tex. App.—Fort Worth Feb. 20, 2014, no pet.) (mem. op.); *see also* Tex. Code Crim. Proc. Ann. art. 62.352(a) (setting forth the two factors).

As we have explained the standard of review,

> In an appeal from an order requiring sex-offender registration, our standard of review "is whether the juvenile court abused its discretion in requiring registration." In our abuse-of-discretion review, we ask whether the juvenile court (1) had sufficient information upon which to exercise its discretion and (2) erred in its application of discretion. We answer the first question under the well-trod principles of a sufficiency-of-the-evidence review . . . .[3]
>
> If sufficient evidence exists, we then determine under the second inquiry whether the juvenile court made a reasonable decision or an

---

[3]In reviewing a factual-sufficiency challenge, we consider all of the evidence and uphold the judgment unless it is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

arbitrary one, i.e., a decision made without reference to guiding rules or principles. If the juvenile court did not enter specific findings, . . . we examine the implied findings supporting the court's decision to require registration.

*Z.P.H.*, 2014 WL 670203, at *2 (quoting *In re J.T.W.*, No. 02-12-00430-CV, 2013 WL 3488153, at *2 (Tex. App.—Fort Worth July 11, 2013, no pet.) (mem. op.)); *see In re C.J.H.*, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.) (holding that legal and factual sufficiency of the evidence are relevant factors in assessing whether the juvenile court abused its discretion in a juvenile delinquency case). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate an abuse of discretion. *D.K.*, 589 S.W.3d at 866 (citing *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010)).

### B. What the Order States

The juvenile court rendered a nine-page order setting forth the law, the evidence, and its findings. We set forth the evidence and the findings as stated in the order:

**Evidence**

[B.R.'s] juvenile probation officer, Sara Saucedo, testified [that B.R.] tested positive for THC at his final sex[-]offender treatment counseling session. [B.R.] also admitted to Saucedo that he had used marihuana, but "only on a couple of occasions" during his probation.

Saucedo also testified about a "lapse" in the family's "safety plan." That incident involved [B.R.'s] grandparent['s] leaving [B.R.] alone with his younger siblings, a circumstance that was an unequivocal violation of

10

[B.R.'s] conditions of probation requiring adult supervision any time [B.R.] was around children younger than a certain age. Saucedo and [B.R.'s] sex[-]offender counselor addressed the "lapse" with [B.R.] and his family.

Shortly after what was to have been his last sex[-]offender counseling session, [B.R.] was arrested for having sexual intercourse with his adult girlfriend in the backseat of a vehicle at a public park. This incident, combined with his positive drug test, resulted in [B.R.'s] unsuccessful discharge from sex[-]offender treatment.

[B.R.'s] sex[-]offender counselor, Christina Zamaniego, testified [that B.R.'s] arrest for a new sex-related offense demonstrate[d] [that] he continues to lack impulse control. Zamaniego criticized [B.R.] and his family for allowing him to be alone, unsupervised, with his girlfriend. Zamaniego believed [that B.R.'s] lack of impulse control might increase his potential to engage [in] dangerous behavior in the future.

Zamaniego also testified about [B.R.'s] lack of complete truthfulness and honesty during his counseling sessions. Zamaniego and [B.R.] eventually worked through that problem.

[B.R.] testified [that] he believed [that] he should not have to register as a sex offender. He believed registration would hurt him and his parents.

In addressing his arrest for public lewdness,[4] [B.R.] characterized his girlfriend as being the sexually aggressive partner. He claimed [that] he merely lost control and was persuaded by his girlfriend to engage in sexual intercourse once they "became unsupervised" at the park. Intercourse was not his idea; he merely followed his girlfriend's lead— according to his testimony[.]

Elsewhere in his testimony [B.R.] similarly minimized his culpability for the events that [had] led to his unsuccessful discharge from sex[-]offender counseling. He portrayed himself as a victim of a fellow student's prank when he unknowingly accepted a marijuana-laced brownie from a fellow student on the date of his last sex[-]offender

---

[4]B.R. testified that the case was dismissed after he completed twenty-four hours of community service. A copy of the dismissal order is included in the record.

counseling session. He told the court, "I was offered a brownie and didn't know it was laced." He asserted [that] he [had] only accepted the brownie from the student—whom [B.R.] could not fully name—because he had not [eaten] breakfast that morning and was very hungry.

## [Juvenile] Court's Findings

The [c]ourt's jurisdiction to rule upon the State's [m]otion [t]o [r]egister did not expire when [B.R.] turned eighteen. *See . . . R.A.*, 465 S.W.3d at 736.

[B.R.'s] repeated efforts at minimizing his culpability for the events that led to his unsuccessful discharge from treatment leads the court to believe [that B.R.] is not a credible witness. Despite years of counseling, [B.R.] still lacks impulse control. He continues to engage in sexually risky behavior. His therapist provided compelling testimony suggesting [that] she believes he may reoffend.

[B.R.] admitted to having continued unsupervised access to the internet through online gaming consoles, a fact [that] only came to light during the court's questioning of [B.R.] His testimony suggested such unfettered, unsupervised access [had] occurred before he turned eighteen, in violation of his conditions of probation.

The evidence showed [that B.R.] did not successfully complete sex[-]offender treatment. He was unsuccessfully discharged from multiple treatment programs[] and fully completed none.

Accordingly, the court finds [that] the evidence does not support a ruling favorable to [B.R.] The protection of the public would be increased by requiring [B.R.] to register under Chapter 62. Any potential increase in protection of the public resulting from registration is not clearly outweighed by any anticipated substantial harm to [B.R.] and/or his family that would result from registration under Chapter 62. [B.R.] did not successfully complete the required sex-offender[ ]treatment program. And the interests of the public require ordering [B.R.] to register as a sex offender under Chapter 62. *Cf. . . . D.K.*, 589 S.W.3d at 868 (citing . . . *Z.P.H.*, . . . 2014 WL 670203, at *[4] . . . (respondent did not meet his burden of proof)); *In re* [*M.C.H.*], No. 11-14-00330-CV, . . . 2016 WL 4131642, at *4 (Tex. App.—Eastland [July 28,] 2016, no pet.)

12

(mem. op.) (failure to complete counseling, moderate risk to reoffend supported registration order).

The court hereby orders the respondent to submit to Chapter 62's sex[-]offender registration requirements.

## C. Analysis

The juvenile court's detailed findings, which are supported by the evidence, reveal that the juvenile court had sufficient evidence upon which to exercise its discretion and made a reasonable decision based on that evidence. As set forth above, the juvenile court granted B.R.'s motion to defer sex-offender registration, which requested that registration be deferred until he had an opportunity to participate in and successfully complete a sex-offender treatment program. But after spending his "entire time of probation in treatment," when it came to what was supposed to be his last sex-offender counseling session, B.R. tested positive for drugs. Not long after that incident, he was arrested for public lewdness for having sex with his girlfriend in the backseat of a vehicle in a park (near a playground) in the middle of the day. Based on the positive drug test and his arrest for the new sex-related offense, B.R. was unsuccessfully discharged from sex-offender treatment. Because B.R. did not successfully complete treatment, he did not fall within Article 62.352(c)'s presumption of exemption from sex-offender registration. Tex. Code Crim. Proc. Ann. art. 62.352(c) ("Following *successful* completion of treatment, the respondent is exempted from registration . . . unless a hearing under this subchapter is held . . . and the court determines the interests of the public require registration." (emphasis added)).

13

Though the statute does not clearly state whether a hearing is required when the respondent is unsuccessfully discharged from treatment, the juvenile court concluded that a hearing was required. At that hearing, B.R. had the burden to show by a preponderance of the evidence that protection of the public is not increased by registration or that any potential increase in protection of the public is clearly outweighed by the anticipated substantial harm to the juvenile and the juvenile's family that would result from registration. *See Z.P.H.*, 2014 WL 670203, at *2. B.R. initially acknowledges this burden in his brief but then argues what the State failed to prove. The burden, however, did not shift to the State; it was B.R.'s burden, and he did not carry it.

Although there was testimony that B.R.'s treatment had gone "very well until the end," the latter part of that statement points to why sex-offender registration was necessary. B.R.'s own testimony revealed that despite having participated in both group and individual counseling throughout his probation and having been given the tools that he needed to succeed, he did not use them when he was at the park with his girlfriend; instead, at the point when they "became unsupervised," he "lost complete control of the situation" and "didn't think the situation thoroughly [sic]." B.R. reoffended by committing another sex offense at the end of his sex-offender treatment—treatment that he was required to successfully complete as a condition of his probation for having been adjudicated delinquent for three prior sex offenses.

B.R.'s lack of impulse control, as demonstrated by the sexual offense at the park, concerned his probation officer and his counselor. B.R.'s probation officer believed that someone who has had sexual relations with a child and who demonstrates poor sexual impulse control is a potential danger to the community. When asked what sort of danger a person's lack of impulse control brings to the community, B.R.'s counselor stated, "Well, when someone with sexual behavior problems acts on their impulses rather than thinking things through, they tend to put themselves at a higher risk for being out in the community than somebody who stops and thinks . . . about the consequences and how it affects other people." This constitutes some evidence to support the juvenile court's finding that "[t]he protection of the public would be increased by requiring [B.R.] to register under Chapter 62."

B.R.'s only attempts to counter this evidence—and thereby show that any potential increase in protection of the public would be clearly outweighed by the anticipated substantial harm to him and his family that would result from registration—were his responses to the following two questions:

Q. Do you think [sex-offender registration] would hurt you?

A. Yes.

Q. Do you think it would hurt your parents as well?

A. Yes, sir.

B.R. did not elaborate on how he would be hurt, nor did he provide testimony that there would be "substantial harm" to him and his family from the registration. B.R. thus did not carry his burden to show by a preponderance of the evidence that any potential increase in protection of the public is clearly outweighed by the anticipated substantial harm to the juvenile and the juvenile's family that would result from registration. *Cf. R.A.*, 465 S.W.3d at 743–44 (rejecting claim that public safety need was outweighed by testimony from juvenile's mother, grandmother, and therapist as to the mental and emotional harm that registration would cause, as well as impacts on juvenile's educational and career prospects).

B.R. further argues within his second issue that even assuming that

> the evidence was not factually insufficient, the [trial] court erred in its application of discretion by failing to properly consider the lack of any need for public protection, the presumed harm to B.R. due to the State's late-filed motion to register him as a sex offender, and the "significant gaps" and developmental differences identified by the United States Supreme Court between juveniles and adults.

B.R. then fleshes out his three arguments, beginning with his argument that "the evidence did not establish a firm showing that [he] was 'at risk to relapse' or 'at an increased risk to reoffend'" and that "the juvenile court's legal conclusion that the protection of the public would be increased by registration was an abuse of discretion." B.R. ignores that this court previously pointed out in *D.K.* that some courts have "relied almost exclusively on nonsexual risk factors to justify registration" and that this court has previously upheld a decision to require registration based in

16

part on an appellant's repeated failures to "maintain . . . self-control," his general downward "spiral[]," and his inability to "safely function in the community." *See* 589 S.W.3d at 868 (first citing *In re C.G.M.*, No. 11-12-00031-CV, 2012 WL 2988818, at *3 (Tex. App.—Eastland July 19, 2012, no pet.) (mem. op.); and then citing *Z.P.H.*, 2014 WL 670203, at *3). Here, the juvenile court had evidence of both nonsexual risk factors (B.R.'s probation violations, which included a positive drug test, unsupervised time with children in the household, and unsupervised time on electronic devices) and sexual risk factors (his failure to successfully complete treatment and his arrest for another sexual offense). Additionally, although B.R.'s counselor did not use the exact terminology of "at risk to relapse" or "at an increased risk to reoffend," she did state that someone who has had sexual relations with a child and who demonstrates poor sexual impulse control is a potential danger to the community.

B.R. next argues that the juvenile court "entirely failed to account for the presumed harm that falls to both a juvenile and his family when there is unnecessary, unexplained delay in the State['s] filing a motion to require the juvenile's sex-offender registration after the juvenile's 18th birthday." B.R. cites and quotes *R.A.* for the proposition that "as to the delay by the State in moving for a hearing under [A]rticle 62.352(c), 'the interests of [the juvenile] and of the public are best served by a motion by the State either during treatment or promptly thereafter.'" 465 S.W.3d at 738. Yet B.R.'s argument does not make sense in light of the timing of the events here. We are hard pressed to see how a one-month delay from the time that B.R. committed the

new offense (and was thereafter unsuccessfully discharged from treatment) until the State filed its motion to order registration (which was filed only one week after B.R.'s eighteenth birthday) constitutes presumed harm to him and to his family.

B.R.'s third argument, which is included throughout his brief and his reply brief, contends that the juvenile court was under an obligation to take into account "significant gaps" between juveniles and adults as identified by the United States Supreme Court in *Miller v. Alabama*, 567 U.S. 460, 471, 132 S. Ct. 2455, 2464 (2012). Due to such "significant gaps," B.R. contends that the juvenile court "should have properly found that [he] was entitled to exemption from sex-offender registration." The State responds with a variety of arguments, including the following:

> [B.R.'s] arguments that the juvenile court failed to take [his] juvenile status sufficiently into account are inapposite. Had [B.R.] been an adult when he committed his sex offenses, he would have been subject to the registration requirements of Chapter 62 without exemption. . . .
>
> . . . .
>
> . . . *Miller* concerned the proper role of the defendant's age when considering *punishment*. The concerns of *Miller* were honored in [B.R.'s] sexual[-]assault case when he received a juvenile adjudication and probation rather than a criminal conviction and prison sentence. In contrast, the sex[-]offender registration scheme of Chapter 62 is civil and remedial, not criminal or punitive.

In addition, we note that B.R. does not make any argument showing how *Miller* helped him meet his burden of proof; instead, he implies that his status as a juvenile—and the inherent mental and emotional deficiencies that lie therein—should exempt him from sex-offender registration. This conclusion belies the language of

18

Article 62.352 and would make such statute a nullity. B.R., however, raises no arguments attacking the statute.

B.R. raises two additional arguments in his reply brief. B.R. states that his delinquent conduct could only have been based on his having had consensual sex with a female who, like him, was also younger than fourteen years of age. B.R. attempts to couch the underlying sexual offenses as "the scenario where two children engaged in consensual sexual conduct." A child under fourteen, however, may not consent to sex. *See May v. State*, 919 S.W.2d 422, 424 (Tex. Crim. App. 1996) (stating that a child under fourteen cannot legally consent to sex and that alleged consent of a victim who is under fourteen is therefore not an available defense); *see also State v. R.R.S.*, 597 S.W.3d 835, 842–43 (Tex. 2020) (explaining that juvenile's legal inability to consent to sex does not render him illegally incapable of committing the offense of aggravated sexual assault). Moreover, B.R. may not collaterally attack the underlying probation order here; the only order on appeal is the sex-offender registration order.

Finally, in his reply brief, B.R. responds to the argument in the State's brief that this court should assign no weight to his testimony (regarding the reoffense of public lewdness in the public park with an adult girlfriend who initiated the sex act) because B.R. provided the sole testimony regarding the details of the act and because the juvenile court found that his testimony lacked credibility. The State's argument was limited to a portion of B.R.'s testimony—regarding the new sex offense that led to his unsuccessful discharge from treatment—that the juvenile court found lacked

19

credibility. B.R. urges this court to "construe any possible credibility determination as relating only to [his] testimony 'minimizing his culpability' for acts prior to his discharge from treatment and should not apply any such determination to [his] testimony more broadly than that narrow subset of subject matter." He contends that his testimony that he and his family would be harmed by an order requiring him to register as a sex offender should still be afforded weight by this court. Even affording weight to B.R.'s testimony about harm, such testimony, as discussed above, did not overcome his burden to show by a preponderance of the evidence that any potential increase in protection of the public is clearly outweighed by the anticipated *substantial harm* to him and his family that would result from registration.

In light of the evidence and the juvenile court's findings based on that evidence, we hold that the juvenile court had sufficient information upon which to exercise its discretion and that the court acted in careful observance of guiding rules and principles. *See M.C.H.*, 2016 WL 4131642, at *4; *Z.P.H.*, 2014 WL 670203, at *4. Accordingly, we overrule B.R.'s second issue.

## V. Conclusion

Having overruled B.R.'s two issues, we affirm the juvenile court's order requiring B.R. to register as a sex offender.

/s/ Dabney Bassel
Dabney Bassel
Justice

Delivered: June 1, 2023

20