**AFFIRM; and Opinion Filed December 17, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-00612-CV

### ABDUL HAMID RASUL AND ABRAHAM RASUL, Appellants
### V.
### AZIZI RAHMAN RASUL, M. SHUAIB RASUL, M. IQBAL RASUL, KHALIL RAHMAN RASUL, HABIB RAHMAN RASUL, M. AMIN RASUL, AND RHAMAN TYRES INTERNATIONAL (PRIVATE) LIMITED, Appellees

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-00061-2013**

## MEMORANDUM OPINION

Before Justices Stoddart, Whitehill, and Boatright
Opinion by Justice Boatright

Abdul Hamid Rasul and Abraham Rasul appeal the trial court's order dismissing their claims for lack of subject matter jurisdiction and on forum non conveniens grounds. Both appellants challenge each of the alternative grounds for dismissal. Because the trial court acted within its discretion in dismissing the case on forum non conveniens grounds, we affirm.

### BACKGROUND

This appeal involves one family and two business ventures. The ventures were initially developed and operated by Abdul Rahman Rasul ("Father"). With his wife Rahima ("Mother"), Father had eleven children—eight sons and three daughters—who were born and raised in Afghanistan. Father owned and managed more than thirty properties in Afghanistan (the "Afghan

Properties"). He eventually moved his family to Pakistan, where he developed a successful business importing tires. Some sons worked with him in different aspects of the business. Others emigrated over time to the United States, as did their sisters. Ultimately all of the brothers obtained U.S. citizenship, which they currently hold along with their Afghan citizenship.

Father died in Pakistan in 2002; he had not made a will. After Father's death, Mother moved to the United States. She died intestate in Collin County in 2016.

Father's estate was never probated. Appellants contend that, the night before Father died, seven of the brothers (all except appellant Abdul Hamid ("Hamid")) agreed orally that:

> The brothers would continue to operate the tire business; [appellees] Shuaib and Iqbal would stay in the region to operate the business for a salary of $100,000 per year to be paid from the business's operating profits; and any funds remaining in government accounts from early versions of the business would be split among the [seven] brothers, with special allocations for the benefit of their sisters and disabled brother Hamid.

Appellants contend further that, in November 2003, the family agreed to allow Shuaib to manage the Afghan Properties as well. The family executed powers of attorney in his name authorizing him to manage and protect the properties on their behalf.

In 2011, appellants allege, Abraham first heard the suggestion that appellees had made significant changes in how the family businesses were being run and that appellants were no longer being treated as the family's agreements had required. When the family gathered in Texas to discuss business, Abraham raised his concerns, but appellees denied that any changes had been made and asserted that profits were still accruing to all family members. Despite these assurances, Abraham asserts, he was denied access to business records. He traveled to Afghanistan in 2012 and learned that appellees were operating the tire import business under the same license that Abraham alleges he negotiated, but they were doing so under the new name of Rahman Tyres International (Private) Limited ("RTI"), a Pakistani corporation. While in Afghanistan, Abraham

also learned that the appellant brothers "attempted to transfer the Afghan Properties to third parties in return for benefits for [RTI]," which those brothers control.

Through discovery in this litigation, appellants learned that other family members had created a number of entities, including RTI, a Cayman Island trust called the Bluebonnet Trust, a second trust named Starwood, as well as a number of corporate entities that the appellee brothers were employing to structure the tire import business. While Abraham was named as a Bluebonnet Trust beneficiary, he was not a beneficiary of the Starwood Trust and had no role in—or knowledge of—the various holding and operating companies involved in the tire business.

Abraham filed this suit in 2013, alleging breach of contract, breach of fiduciary duty, money had and received, conversion, fraud, fraud by nondisclosure, violations of the Uniform Fraudulent Transfer Act, and conspiracy. Habid joined the suit as a plaintiff, alleging that he is a third-party beneficiary of his brothers' 2002 oral agreement.

Appellees filed their motion to dismiss all of appellants' claims based on the alternative grounds of lack of subject matter jurisdiction and forum non conveniens. The parties submitted documents, affidavits, and declarations, including extensive expert testimony. The trial court granted the motion on both grounds. Abraham and Habid appeal.

## FORUM NON CONVENIENS

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). A trial court's ultimate inquiry asks where trial will best serve the convenience of the parties and the ends of justice. *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947). Resolution of that inquiry is committed to the sound discretion of the trial court. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). We give the trial court's decision substantial deference, and we will reverse its determination only if the record

shows a clear abuse of discretion. *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31, 35 (Tex. 2010) (per curiam). In this case, the trial court made extensive findings of fact and conclusions of law tracing the settled three-step analysis required to resolve a motion to dismiss under Texas' common law doctrine of forum non conveniens, i.e., (1) is there an available alternative forum, (2) is there an adequate alternative forum, and (3) does the balance of private and public-interests involved favor dismissal of the lawsuit in favor of the alternative forum. *Vinmar Trade Fin., Ltd. v. Util. Trailers de Mexico, S.A. de C.V.*, 336 S.W.3d 664, 672 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

### Existence of an Alternative Forum

In their second issue, appellants argue that the trial court erred by determining that neither Pakistan nor Afghanistan will provide an available and adequate forum for the resolution of their claims.

### *Availability of the Forums*

A trial court cannot dismiss a case for forum non conveniens unless another forum is available to the plaintiff. Generally, a forum is "available" for purposes of forum non conveniens if the entire case and all the parties can come within the jurisdiction of that forum. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 710 (Tex. App.—Dallas 2010, no pet.). Appellees contend that Afghanistan provides an available forum for the claims related to the Afghan Properties (the "Afghan Real Estate Claims") and that Pakistan provides an available forum for the claims related to the tire import business ("Tire Business Claims"). And appellees asserted below that they would accept informal service and consent to jurisdiction in both forums if this case were dismissed and re-filed there.

Appellants raise a single objection to the availability of these forums. They argue that appellees' consent to jurisdiction was based solely on their counsel's representations, not on

evidence. Thus, they assert, there is no evidence that Afghanistan or Pakistan could obtain jurisdiction of the parties to the case so as to make it an available forum under Texas law.

A defendant may demonstrate the availability of a forum by stipulating that it would submit to personal jurisdiction there. *In re Oceanografia, S.A. de C.V.*, 494 S.W.3d 728, 732 (Tex. 2016). Appellees offered their consent to jurisdiction in writing in their motion to dismiss and in their reply brief in support of that motion; they repeated the offer at the hearing on the motion to dismiss. "A 'stipulation' is an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto." *Ortega-Carter v. Am. Intern. Adjustment Co.*, 834 S.W.2d 439, 441–42 (Tex. App.—Dallas 1992, writ denied). Appellees' concession that they would submit to jurisdiction was made by their attorneys during the judicial proceeding surrounding the motion to dismiss. It was an effective stipulation, *id.*, and therefore was sufficient to establish Afghanistan and Pakistan as available forums. *Oceanografia*, 494 S.W.3d at 732.

### *Adequacy of the Forums*

A forum is "adequate" for purposes of forum non conveniens if the plaintiff would not be deprived of all remedies or treated unfairly in that forum. *RSR Corp.*, 309 S.W.3d at 710. An alternative forum will not be adequate if the remedies it offers are so unsatisfactory that they really comprise no remedy at all. *In re Gen. Elec. Co.*, 271 S.W.3d 681, 688 (Tex. 2008). That said, "comparative analyses of procedures and substantive law in different forums should be given little weight in forum non conveniens analysis because such analyses pose significant practical problems." *Id.* Indeed, the doctrine of forum non conveniens exists in part so that courts may avoid conducting complex exercises in comparative law. *Piper Aircraft Co.*, 454 U.S. at 251.

*Pakistan*

Appellants contend initially that the Tire Business Claims would be subject to egregious delay if they were filed in Pakistan. Appellants' expert offered evidence, albeit anecdotal, of cases that had been in progress for ten to twenty years in Pakistan. But delay in disposition of a case can occur in any U.S. jurisdiction depending on such factors as docket congestion, mandates for preferential settings for certain types of cases, or funding of the judiciary. *In re Gen. Elec.*, 271 S.W.3d at 688. Indeed, "[t]he many known and unknown matters affecting pretrial events and trial settings are necessarily speculative and are reasons comparative analyses have been termed 'complex' and should be avoided in forum non conveniens consideration." *Id.* Nevertheless, in this case the issue of delay can be addressed in a meaningful way. Appellees offered evidence that Pakistan allows a special Commissioner to be appointed in a process that will expedite handling of the Tire Business Claims. Appellees have stipulated that they will support such an appointment, comply with discovery requests, and cooperate with the Pakistan court.

Appellants contend specifically that Pakistan is not an adequate forum for Hamid. He is disabled by cerebral palsy, and a Texas court has named his daughter as his guardian. In Pakistan, Hamid urges, a court would disallow his female guardian and could name itself as guardian, which could result in unfair treatment. Appellees' expert disagreed that a woman could not act as guardian in Pakistan, and he opined as well that Hamid's son, who traveled with his father and uncle Abraham to Afghanistan in 2012, could serve as Hamid's guardian.

Finally, appellants posit that they could be charged with blasphemy if the Tire Business Claims are re-filed in Pakistan, ostensibly because they "attempted to circumvent the Islamic inheritance laws" here in Texas. But appellees' legal expert rejected the argument that appellants would be at risk if they were to bring their claims in Pakistan. He stated that he was unaware of such a charge being made in an inheritance case over his forty years of experience practicing law

in Pakistan. On the contrary, he opined that appellants could challenge appellees' actions with respect to Father's estate under Pakistan's Succession Act.

The ultimate question in this inquiry is whether Pakistan provides a remedy for appellants' claims. The trial court concluded that it does. Appellees provided expert testimony confirming that Pakistan law provides damages for breach of contract under that nation's Contract Act. Tort remedies, likewise, are available; in Pakistan, "the Common Law of England is applied as a matter of justice, equity and good conscience" in tort cases. In addition, a Pakistani court can impose equitable remedies and procedures, including ordering an accounting or an attachment of property. Expert testimony supports the trial court's conclusion that Pakistani courts can provide remedies to redress appellants' Tire Business Claims.

The trial court's determination that Pakistan was an adequate forum for the Tire Business Claims was supported by evidence. We discern no abuse of discretion in that determination.

*Afghanistan*

Appellants argue at the outset that Afghanistan is an inadequate forum based upon its status as an active combat zone. They contend that travel by U.S. citizens is discouraged there, and they assert that requiring them to litigate their claim in a war zone "is akin to providing [them] no remedy at all." Appellees argue that we should not consider this issue, which, they say, was not raised by evidence below. But even if we consider the government documents that appellants proffer on appeal, we cannot conclude that these appellants would have no remedy in an Afghan court. Appellants are Afghan citizens. We know from their own pleadings that they were able to travel to Afghanistan during the pendency of this litigation. Abraham initiated a lawsuit in the Afghan courts concerning rents on a specific property; in discovery responses, Abraham stated that "the lawsuit did not proceed to conclusion and [he] believes that this was due, at least in part, because Shuaib had a power of attorney over the Afghan Properties at that time." When appellants

were together in Afghanistan they met with an attorney and successfully revoked Shuaib's powers of attorney concerning the Afghan properties. It appears that appellants will be able to invoke the Afghan legal system as necessary to pursue their Afghan Real Estate Claims.

Appellees also produced expert testimony indicating that appellants' claims would be amenable to redress in the Afghan courts. Their expert identified specific provisions in Afghanistan's Civil Code that would apply to appellants' claims and would support awards of damages if those claims were successful. The expert concluded that "Afghanistan law applies to the agency created by the alleged powers of attorney and for any usurpation of the Afghanistan properties, and provides for compensation in case of breach of the agent's duties, usurpation of the properties or unjust gain from the properties."

Appellants assert that Afghan courts "defer jurisdiction to the court in whose territory the monetary assets are located," and—because appellees have moved the rents from these properties outside of Afghanistan—that country would not hear their claims. Again, appellees' expert cites a specific Afghan statute to show that its courts have jurisdiction "of any claim *related to* the division or assignment of [a] bequest." Thus, whether a trial between these parties addresses title to the Afghan properties in Father's estate or only the rents generated by those properties, Afghan courts can exercise their jurisdiction.

Finally, appellants contend that even if the Afghan courts exercise jurisdiction over their claims, appellants will be unable to pursue those claims effectively because discovery is not a part of Afghanistan' civil procedure. Appellants argue they will be unable to compel document production or witness attendance and that absent "the means to trace, source, and quantify" the rents generated by the Afghan properties, they cannot litigate their claims. But again, Appellees produced expert testimony, citing specific statutory authority, establishing that Afghan courts can compel information from parties, third-parties, and experts. And as to appellants' concerns about

proving the rents they claim, their expert quotes the provision of Afghanistan's Code of Civil Procedure that provides:

> In claims whose complexity is the result of accounting issues and of the examination of papers and documents, or if the complexity of the claims has originated from elsewhere, the court shall assign one of the members of the court or an expert to supervise the issue and take actions thereafter.

The trial court's determination that Afghanistan was an adequate forum for the Afghan Real Estate Claims was supported by evidence.

We overrule appellants' second issue.

### Balancing Private and Public Interests in the Litigation

When available and adequate forums exist, we consider the balance of relevant private and public interest factors between the alternative forums. *Gulf Oil*, 330 U.S. at 508. The trial court found that, on balance, these factors "weigh heavily for, and strongly favor, dismissal." In appellants' third issue, they challenge the trial court's balancing of those factors. Again, we review the trial court's determination for an abuse of discretion: we do not conduct a de novo review by mechanically re-weighing each of the *Gulf Oil* factors. *Quixtar*, 315 S.W.3d at 35. Instead, we ask whether the trial court's balancing of the factors was supported by evidence. *Id.* "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co.*, 454 U.S. at 257.

*Private-Interest Factors*

The private-interest factors reflect the interests of the litigants and include (1) the relative ease of access to sources of proof; (2) the availability of the compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses; (3) the possibility of viewing the premises, if doing so would be relevant to the action; (4) issues related

to the enforceability of a judgment if one is obtained; and (5) all other practical problems affecting the ease and expense of the case. *Gulf Oil*, 330 U.S. at 508.

Appellants focus on the parties' personal contacts with the state of Texas, and we agree that appellants have offered evidence that all parties have contacts with the state. However, appellees have offered evidence of the significant sources of proof in the alternative venues: the Afghan properties, the deeds to those properties held in government offices, and records related to any income they have generated are all located in Afghanistan; the tire business, its records, employees, inventory, and operations are all located in Pakistan; and the majority of non-family witnesses are located in the alternative forums. Appellees also offered evidence that: both Pakistan and Afghanistan can compel attendance of unwilling witnesses; the cost of appellants' travel to the Mideast would be roughly the same as that of Shuaib's and Iqbal's travel to Texas; and judgments obtained in either Pakistan or Afghanistan could be enforced in those countries or in Texas as foreign judgments under chapter 36 of the Texas Civil Practice and Remedies Code.

*Public-Interest Factors*

The public-interest factors reflect the interests of the forum and include (1) the administrative difficulties for courts "when litigation is piled up in congested centers instead of being handled at its origin"; (2) the burdens, including jury duty, imposed on people of a community which has no relation to the litigation; (3) the interest in having localized controversies decided where they arose; and (4) avoiding conflicts of law issues. *Gulf Oil*, 330 U.S. at 508-509.

Appellants, again, argue that Texas has the most significant relationship to this litigation. They contend that appellees' "offending conduct (e.g., the breach [of contract], fraud, and fraudulent transfers)" occurred in Texas at family meetings in and around Collin County. Appellants concede that their alleged oral agreement with appellees was made in Pakistan and may be governed by the law of Afghanistan or Pakistan. They also acknowledge that their "primary

injury . . . was the misappropriation of funds generated from the tire business and Afghan Properties." Appellees respond that the burdens weighing on a forum are more appropriately borne by the local forums where the alleged contract was formed and the purported misappropriations took place.

The trial court's findings stress the administrative burden it would bear if the case were tried in Collin County. Specific issues for the trial court would include translation of (a) witness testimony, deeds, and documents related to the Afghan Properties, and (b) accounting, banking, trade licenses, and other records related to the tire import business. At a minimum, the trial court would have to address the law of Afghanistan and Pakistan to determine whether they should apply to appellant's claims. It would likely have to interpret and apply that law to significant issues in the litigation.

Appellants argue that the trial court put too much emphasis on the difficulty of applying foreign law. They declare that this is merely an issue of choice of law, that Texas courts can apply foreign law, and that difficult foreign law should not suffice for dismissal. But "the public interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'" *Piper Aircraft Co.*, 454 U.S. at 251 (quoting *Gulf Oil*, 330 U.S. at 509).

We conclude that the trial court considered all relevant public and private interest factors and that its balancing of those factors was reasonable. The evidence in the extensive record supports the trial court's findings. We note as well that appellants' counsel acknowledged at oral argument that there was evidence on both sides of almost every issue. Given this record, the trial court's decision deserves substantial deference. *Id.* at 257.

Appellants stress that their choice of forum should also be given great deference. Although we agree that a plaintiff's choice of forum is entitled to deference, dismissal should not be

automatically barred when a plaintiff has filed suit in his home forum. *Id.* at 256, n. 23. And Abraham—a resident of Colorado—did not file suit in his home forum. This does not mean that his choice of forum deserves no deference. We recognize that Habid, who joined the suit as a plaintiff, is a Texas resident. "But that a plaintiff is not a Texas resident speaks directly to a defendant's burden." *Quixtar*, 315 S.W.3d at 31. And when the balance of conveniences suggests that trial in Texas would be unnecessarily burdensome for the defendants or the court, dismissal is proper. *Piper Aircraft Co.*, 454 U.S. at 260, n. 23. We cannot say that the trial court abused its discretion in dismissing this litigation.

We overrule appellant's third issue.

## CONCLUSION

We affirm the trial court's order dismissing appellants' claims without prejudice on the ground of forum non conveniens. Given this disposition, we need not address appellants' first issue.

/Jason Boatright/

JASON BOATRIGHT
JUSTICE

170612F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ABDUL HAMID RASUL AND
ABRAHAM RASUL, Appellants

No. 05-17-00612-CV        V.

AZIZI RAHMAN RASUL, M. SHUAIB
RASUL, M. IQBAL RASUL, KHALIL
RAHMAN RASUL, HABIB RAHMAN
RASUL, M. AMIN RASUL, AND
RHAMAN TYRES INTERNATIONAL
(PRIVATE) LIMITED, Appellees

On Appeal from the 429th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 429-00061-2013.
Opinion delivered by Justice Boatright.
Justices Stoddart and Whitehill
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees AZIZI RAHMAN RASUL, M. SHUAIB RASUL, M. IQBAL RASUL, KHALIL RAHMAN RASUL, HABIB RAHMAN RASUL, M. AMIN RASUL, and RHAMAN TYRES INTERNATIONAL (PRIVATE) LIMITED recover their costs of this appeal from appellants ABDUL HAMID RASUL and ABRAHAM RASUL.

Judgment entered this 17th day of December, 2018.