

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00320-CV
_____

HEATHER HAMILTON, APPELLANT

V.

ARTHUR MAESTAS, APPELLEE

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2013-506,691; Honorable Ruben G. Reyes, Presiding

April 7, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Heather Hamilton, appeals from the trial court's *Order in Suit to Modify Parent-Child Relationship* rendered in favor of Appellee, Arthur Maestas. She presents four issues asserting abuse of discretion by the trial court as follows: (1) in finding sufficient evidence of a material and substantial change in circumstances to modify the exclusive right to determine the children's primary residence; (2) in determining there was

sufficient evidence that modification of the exclusive right to determine the children's primary residence was in the best interests of the children; (3) in refusing to impose a geographic restriction; and (4) in failing to grant her counter-petition to modify child support. Maestas did not favor us with a brief. We affirm.

## BACKGROUND

Hamilton and Maestas divorced on January 23, 2014. At that time, they were appointed joint managing conservators of their two sons, who were two and four years old. Hamilton was awarded the exclusive right to designate the children's primary residence and Maestas was ordered to pay $800 per month in child support. Maestas was working as an EMT in a county other than the county where the children lived, Hamilton was in school and working at a car wash, and the children were in daycare. In February 2016, Hamilton quit her job due to a salary cut, filed for unemployment, and in August 2016, she enrolled in cosmetology school.

That same year, Maestas remarried and had a child with his new wife. Maestas has lived in the same house for over a decade. Since the divorce, he has changed jobs and now was works as a foreman with Union Pacific Railroad. He earns a good salary and has his family insured through his employment. His schedule requires him to work out of town for eight days and be off for eight days. His wife works as a sales account manager for Coca Cola and has a very flexible schedule that allows her to care for the children when Maestas works out of town.

In September 2017, Maestas petitioned to modify the parent-child relationship alleging a material and substantial change in circumstances and seeking (1) the exclusive

2

right to designate the children's primary residence, (2) modification of the conditions for access to or possession of the children, and (3) modification of previously ordered child support should he be given the exclusive right to determine the children's residence. Maestas also alleged the modifications would be in the children's best interests.

By counter-petition, Hamilton also sought modification of the possession and access order contained in the divorce decree. Specifically, she requested that Maestas's possession correspond to his days off from work. She also requested the right of first refusal when Maestas was unavailable for his periods of possession. Hamilton also sought specific dates and times for Maestas to communicate with his children by telephone and an increase in child support in accordance with the Family Code guidelines. Finally, she sought injunctive relief that prohibited Maestas from using a tracking device during her periods of possession.

Following a hearing, the trial court found Maestas's allegations to be true and granted his petition to modify conservatorship. The trial court ordered that both parents remain as joint managing conservators but appointed Maestas as the parent with the exclusive right to designate the children's primary residence without regard to a geographic location. Hamilton was ordered to pay Maestas $225 per month in child support beginning June 1, 2018.

### APPLICABLE LAW

Texas's public policy assures that children have frequent and continuing contact with parents who have shown the ability to act in the children's best interests and it serves to encourage parents to share in the duties and rights regarding raising their children after

3

divorce. TEX. FAM. CODE ANN. § 153.001(a)(1)(3) (West 2014). A trial court may modify a prior conservatorship order if modification would be in the best interest of the child and the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since rendition of the prior order. TEX. FAM. CODE ANN. § 156.101(a)(1)(A) (West 2014). The burden of proof by a movant seeking modification of the parent-child relationship as well as a trial court's findings on modification of conservatorship shall be based on a preponderance of the evidence. TEX. FAM. CODE ANN. § 105.005 (West 2014).[1]

## STANDARD OF REVIEW

Findings in a conservatorship case are reviewed under the ordinary legal and factual sufficiency standards.[2] *In re A.L.H.*, 515 S.W.3d 60, 80 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). In reviewing evidence for legal sufficiency, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). A factual sufficiency review requires us to examine the entire record and set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

---

[1] Hamilton filed a *Request for Findings of Fact and Conclusions of Law* on August 6, 2018; however, her *Notice of Past Due Findings of Fact and Conclusions of Law* was not filed until September 24, 2018, making the past due notice untimely. *See* TEX. R. CIV. P. 297. In her brief, Hamilton asserts she filed her notice of past due findings on September 2, 2018, but the clerk's file stamp and *Certificate of Service* both reflect September 24, 2018. Therefore, we presume the trial court made all implied findings necessary to support its order. *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 401 (Tex. 2016).

[2] Essentially, a challenge to the sufficiency of the evidence in a family law matter is a component of an overarching abuse-of-discretion analysis. *See Willett v. Rodriguez*, No. 03-16-00084-CV, 2017 Tex. App. LEXIS 5096, at *6 n.11 (Tex. App.—Austin June 2, 2017), *pet. denied*, No. 17-0691, 2017 Tex. LEXIS 1085, at *1 (Tex. Dec. 1, 2017) (mem. op.). *See also Bradshaw v. Bradshaw*, 555 S.W.3d 539, 549 (Tex. 2018) (Devine, J. concurring) (noting that in family law cases, the abuse of discretion standard of review "overlaps with the traditional sufficiency-of-the-evidence standards of review").

*In re A.L.H.*, 515 S.W.3d at 80.  The fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony.  *City of Keller*, 168 S.W.3d at 819.  In conducting our review, we may not substitute our judgment for that of the fact finder's even if we would reach a different answer on the same evidence.  *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998), *cert denied*, 525 U.S. 1017, 119 S. Ct. 541, 142 L. Ed. 2d 450 (1998).

When a party fails to properly request findings of fact and conclusions of law, the trial court is presumed to have made all findings of fact necessary to support its judgment, and it must be affirmed on any legal theory that is supported by the evidence**.** *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Garcia v. Garcia*, 170 S.W.3d 644, 648 (Tex. App.—El Paso 2005, no pet.).  When a reporter's record is filed, however, the implied findings are not conclusive and may be challenged for legal and factual sufficiency of the evidence.  *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

A trial court's order modifying conservatorship is reviewed for abuse of discretion.  *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Nichol v. Nichol*, No. 07-12-00035-CV, 2014 Tex. App. LEXIS 492, at *7 (Tex. App.—Amarillo Jan. 15, 2014, no pet.) (mem. op.).  Absent a clear abuse of discretion, the trial court's order modifying the prior order will not be disturbed on appeal.  *In re M.S.F. & M.S.F.*, 383 S.W.3d 712, 715 (Tex. App.—Amarillo 2012, no pet.)

In reviewing a trial court's decision for abuse of discretion, we determine whether the trial court acted without reference to any guiding rules and principles or, alternatively, whether the trial court's actions were arbitrary and unreasonable based on the

circumstances of the case. *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). The fact that a trial court may decide a matter within its discretion in a different manner than an appellate court in a similar circumstance does not demonstrate an abuse of discretion. *Downer*, 701 S.W.2d at 242.

### ISSUE ONE—MATERIAL AND SUBSTANTIAL CHANGE

The existence of a material and substantial change in circumstances is a threshold determination in a modification proceeding. *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The burden to establish a material and substantial change in circumstances falls on the party seeking modification. *Agraz v. Carnley*, 143 S.W.3d 547, 553 (Tex. App.—Dallas 2004, no pet.). A material and substantial change occurs when the party seeking modification demonstrates the conditions that existed at the time of entry of the prior order have changed as compared to the circumstances existing at the time of the modification hearing. *Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, pet. denied). However, there are no guidelines as to what constitutes a material and substantial change in circumstances, and each case must be determined according to the facts and circumstances of that particular case. *See In re N.R.T.*, 338 S.W.3d 667, 679 (Tex. App.—Amarillo 2011, no pet.).

In her counter-petition, Hamilton alleged "[t]he circumstances of the children, a conservator, or other party affected by the order to be modified *have materially and substantially changed* since the date of rendition of the order to be modified." (Emphasis added). An opposing party's pleadings can constitute a judicial admission that may substitute for evidence that has a "conclusive effect and bars the admitting party from

6

later disputing the admitted fact." *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001); *Gonzalez v. Sanchez*, No. 07-16-00289-CV, 2018 Tex. App. LEXIS 1467, at *7-8 (Tex. App.—Amarillo Feb. 23, 2018, no pet.) (mem. op.). A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue and bars the admitting party from disputing it. *See In re Guerrero*, 465 S.W.3d 693, 705 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Hamilton's allegation of a material and substantial change precludes her from asserting on appeal that there were no material and substantial changes in circumstances since rendition of the divorce decree. *See In re R.A.W.*, No. 07-13-00316-CV, 2015 Tex. App. LEXIS 3039, at *5 (Tex. App.—Amarillo March 27, 2015, no pet.) (mem. op.) (finding that mother had judicially admitted an essential element of the father's case for modification).

In addition to Hamilton's judicial admission, changes did occur since the divorce decree that individually and considered alone may not have been significant, but when considered together, satisfy the statutory requirement for a material and substantial change in circumstances. Maestas had remarried since the previous order. He and his new wife had a child, and Maestas had changed jobs. *See Arredondo v. Betancourt*, 383 S.W.3d 730, 734-35 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (finding that marriage of one of the parties may be a material and substantial change). *See also In re J.A.R.*, 02-04-123-CV, 2005 Tex. App. LEXIS 8912, at *22 (Tex. App.—Fort Worth Oct. 27, 2005, no pet.) (mem. op.) (finding that remarriage and birth of a child may support a material and substantial change). Although these factors alone may not have been sufficient to find a material and substantial change, we cannot say that when considered together, they did not constitute a material and substantial change. Based on the record before us

and Hamilton's judicial admission that there have been material and substantial changes,[3] we cannot say the trial court abused its discretion in finding material and substantial changes in circumstances since rendition of its prior order. Issue one is overruled.

**ISSUE TWO—BEST INTEREST REGARDING THE EXCLUSIVE RIGHT TO DESIGNATE THE CHILDREN'S PRIMARY RESIDENCE**

A court's primary consideration in determining conservatorship and possession of and access to a child must always be the best interest of the child. TEX. FAM. CODE ANN. § 153.002 (West 2014). The Family Code does not list factors for a trial court to consider in determining whether modification of custody is in a child's best interest. However, the factors in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976), are helpful. Those factors, which are not exhaustive, include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* In the context of a custody modification, other factors to consider include the child's need for stability and the need to prevent constant litigation in child custody cases. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000).

---

[3] Interestingly, in her argument under issue four by which she challenges the trial court's child support order, she alleges "there is a material and substantial change." Then, in the conclusion of her brief, she maintains "[t]here was no material and substantial change in circumstances."

Here, the evidence established that both parents love their children and are bonded with them. Neither parent is an inappropriate caregiver and neither presents a danger to the children. There was no evidence to indicate that either of the parents' homes were unsuitable or that the environment in which the children would be raised was incompatible with their best interests.

At the time of the final hearing, the boys were six and eight years old. The older son participates in gifted and talented classes. Maestas described him as "happy-go-lucky," loving, and a "rule-follower." He suffers from allergies and asthma. Maestas described his younger son as ornery, brilliant, and witty. He has a sensory issue that sometimes causes him distress with the way his clothes fit. He also requires frequent dental care due to serious tooth decay. Regarding his older son, Maestas testified to one occasion when his son had been prescribed a ten-day antibiotic. When it was time for the children to go to Maestas's home, Maestas realized that Hamilton had not dispensed the medication as prescribed.

Maestas testified that since the divorce, he has remarried, has another child, and has changed jobs. He testified he was willing to change his work schedule to accommodate periods of possession. He also testified that when he works out of town, he communicates regularly with his children by telephone or Facetime. His wife's schedule is very flexible and she is able to maintain the children's routine and extracurricular activities when he is away working. He testified about various weekend activities he and the children engage in such as fishing, camping, and sports. He planned for the children to attend church camps in the summer.

9

Maestas testified that even when the children were young and in daycare, teachers and former daycare staff reported issues with hygiene, ill-fitting clothes, inappropriate apparel for cold weather, and sleeping during class. The younger child's kindergarten teacher testified that Maestas and his wife were very involved parents. Conversely, she did not have much interaction with Hamilton

Maestas admitted that he had high expectations for his children. He felt it was important that they have structure, routine, and discipline in their lives which he and his wife can provide with more consistency than Hamilton. He described the children's daily routine after school as consisting of one hour to play and unwind, followed by required reading and homework, if any. The family would then share dinner together, after which the children bathed or showered, brushed their teeth, and went to bed. His wife maintained the routine even when he worked out of town.

After Maestas remarried, issues arose concerning Hamilton's belief that the new wife wished to replace her as the mother of the children. The parents' communications, mostly by text, became strained and according to Hamilton, were not always appropriate. She added her own mother to a group text with Maestas and his wife, which she claimed softened the tone of the communications.

Although both parents claimed to have set bedtimes for the children, some of the children's teachers testified the children were extremely tired and sleepy on the mornings after they had spent the night or the previous weekend with their mother. The teachers noticed a difference and improvement in their work on the days after they had spent the night or the previous weekend with Maestas and his wife. *See In re A.B.O.*, No. 06-14-

00071-CV, 2015 Tex. App. LEXIS 4755, at *21 (Tex. App.—Texarkana May 12, 2015, no pet.) (mem. op.) (considering the conservator's involvement in the children's education, maintaining contact with school officials and counselor, and making sure children were involved in extracurricular activities in determining conservatorship).

Maestas and his wife were very involved with the children's education as well as their extracurricular activities which included football and baseball. The evidence showed that Maestas and his wife consistently attended practices as well as games. Hamilton enrolled the children in karate but the children did not complete the program. Hamilton has a daughter that is older than her sons. She is involved in cheer competitions and Hamilton accompanies her to those competitions which usually occur out of town.

One witness who appeared for Maestas testified that her son and the parties' older son played football together. She recalled that one evening after practice and after all the coaches and parents had left, the parties' older son had not been picked up by his mother and he appeared "a little shook up." She offered to wait with him until someone came for him. Eventually, an adult whom she did not recognize arrived to pick up the child. The witness also testified that during baseball season, Hamilton attended the games but not the practices, while it was "very rare" for Maestas and his wife to miss anything.

According to Hamilton, Maestas's remarriage created hostility in co-parenting the children. She admitted she was not as involved with the children's school and teachers because she herself was in school. She did modify her schedule to be more available after she finished cosmetology school.

11

Hamilton's mother testified that she and her husband help care for the children when Hamilton is unavailable. She was cross-examined about some Facebook posts that Hamilton posted showing photos and comments related to drinking habits. She did not comment on the posts other than to say that Hamilton had consumed three beers at the grandmother's birthday party while the children were present.

During Hamilton's testimony, she admitted the Facebook posts related to her drinking habits had occurred since the divorce. Photos introduced into evidence over objection showed her with Jell-O shots and photos with captions such as "downing shots" and comments related to drunk texting. She denied having a drinking problem and claimed that she never drank to a point that prevented her from caring for her children.

The record also contains evidence of trivial disputes between the parents that does not directly affect the children and is more likely the result of Hamilton's dislike of Maestas's wife. For instance, Hamilton complained that Maestas allowed his sister and his wife to exercise his possessory rights if he was out of town working. However, Hamilton likewise allowed her mother and stepfather to care for the children on many occasions. The parties also argued over a watch that Maestas had given to one of the children which Hamilton accused him of using to track her whereabouts.

Based on the evidence presented, we cannot say that the trial court abused its discretion in finding that the children's best interests were served by appointing Maestas as the managing conservator with the exclusive right to determine their residence. Issue two is overruled.

**ISSUE THREE—FAILURE TO IMPOSE A RESIDENCY RESTRICTION**

Section 153.134(b)(1) of the Family Code authorizes the trial court to establish "a geographic area within which the conservator shall maintain the child's primary residence" or "specify that the conservator may determine the child's primary residence without regard to geographic location." TEX. FAM. CODE ANN. § 153.134(b)(1) West 2014). The Family Code does not, however, provide specific factors for a court to consider when determining whether a geographic restriction is in the best interest of a child.

In the final decree of divorce that appointed Hamilton as the managing conservator with the exclusive right to determine domicile, the trial court imposed a three-county geographic restriction (Lubbock County, Hansford County, and Ochiltree County) for a two-year period and thereafter the restriction was for the State of Texas. The three-county restriction was due to Maestas's employment at the time as an EMT in a county other than where the children resided. In their live pleadings in the underlying modification proceeding, neither party requested or even addressed a geographic restriction.

Several months after the trial on the merits, the parties reconvened to address the contested matter of whether the trial court should include a geographic restriction in its modification order. The trial court suggested that it was not required to consider or rule on something that had not been pleaded by either party. The parties discussed whether the trial court had a responsibility to determine whether to include a geographic restriction or whether the issue was discretionary. The trial court gave the parties an opportunity to brief the issue. Hamilton filed a brief in support of imposing a geographic restriction on Maestas, should he be awarded the exclusive right to designate the primary residence of the children. Her brief emphasized the public policy of Texas embodied in section

13

153.001(a) of the Family Code.[4] She argued that section 153.134 of the Family Code imposed responsibility on the trial court to address the issue of a geographic restriction. Maestas did not submit a brief on the issue.

A week or so later, the trial court issued a letter ruling indicating that based on the pleadings, evidence, and arguments of counsel, it would not be imposing a geographic restriction on Maestas whom the trial court had already decided to appoint as the primary managing conservator. In line with its letter ruling, the court's final order specifies that Maestas has the exclusive right to designate his children's primary residence "without regard to a geographic location."

Hamilton urges that based on public policy considerations, the trial court had a responsibility, whether pleaded for or not, to impose a residency restriction on Maestas's exclusive right to designate the children's primary residence. We disagree. Section 153.134(b)(1)(B) of the Family Code specifically authorizes a trial court to specify that a conservator "may determine the child's primary residence *without regard to geographic location.*" (Emphasis added). The trial court's order specifies the statutory language that Maestas has the exclusive right to designate the children's primary residence "without regard to a geographic location." Whatever rationale the trial court may have expressed for not including a geographic location is irrelevant. It had the authority and the discretion under the statute to exclude a geographic location. Issue three is overruled.

---

[4] Section 153.001(a) provides that the public policy of Texas is to "(1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child; (2) provide a safe, stable, and nonviolent environment for the child; and (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

14

## ISSUE FOUR—MOTION TO MODIFY CHILD SUPPORT

In the final decree of divorce, the trial court ordered that Maestas pay Hamilton $800 per month in child support. In the order being appealed, because Maestas was appointed the conservator with the exclusive right to designate the children's residence, the trial court ordered that Hamilton pay Maestas $225 per month in child support beginning June 1, 2018.

By her final issue, Hamilton does not challenge that portion of the court's order directing her to pay child support. Instead, relying on section 156.401 of the Family Code, which provides the grounds for modification of child support, she argues that three years have passed since the initial child support order and the current support she receives differs from the statutory guidelines. TEX. FAM. CODE ANN. § 156.401(a)(2) (West 2014). She argues that due to material and substantial changes in circumstances, she should be receiving $1,000 per month instead of $800 from Maestas in child support.

Because the trial court's new order extinguished Maestas's obligation to pay Hamilton any child support and because she does not challenge that portion of the new order that she pay child support to him, her complaint about the amount of child support Maestas should pay to her is thereby rendered moot. *See* TEX. R. APP. P. 38.1(a)(i). Issue four is overruled.

**CONCLUSION**

The trial court's *Order in Suit to Modify Parent-Child Relationship* is affirmed.


Patrick A. Pirtle
Justice