# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00093-CV

**Lucus Kirkpatrick and Calibrated Addiction, LLC, Appellants**

**v.**

**Custom Tuning Team Inc. and Robert Ivey, Appellees**

### FROM THE 424TH DISTRICT COURT OF LLANO COUNTY
### NO. 21363, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Lucus Kirkpatrick and Calibrated Addiction, LLC appeal from the trial court's order dismissing their suit against Custom Tuning Team Inc. and Robert Ivey on grounds of forum non conveniens. Appellants contend that the trial court abused its discretion by dismissing their claims. We will reverse the trial court's order and remand for further proceedings.

## BACKGROUND

Texans Kirkpatrick and Ivey owned Calibrated, a Texas company that owned software that tuned vehicles by reprogramming their computer systems primarily over the internet. In part due to concerns that the business may not comply with United States environmental regulations, Kirkpatrick and Ivey sold their company to Custom Tuning Team Inc. (CTT), a company formed in Alberta, Canada, as did Jonathan Castellaw, a Tennessee resident who owned Higher Power, which did similar business. The CTT-Calibrated agreement, dated May 25, 2018, was signed by Ivey, Kirkpatrick, and CTT's owner, Josh Melnyk, a resident of Fort Saskatchewan,

Alberta, Canada. The Purchase Agreement states that any notices to Calibrated should be sent to an address in Kingsland, Texas. The parties agreed that the Purchase Agreement would be "governed by and construed under the laws of Alberta, Canada" regardless of any conflict-of-laws principles that might indicate otherwise. Calibrated sold its records, website, and other information in exchange for CTT's agreement to pay Calibrated at least $50,000 per month for at least five years until it had paid up to $10 million total. Kirkpatrick testified at the dismissal hearing that CTT made approximately $750,000 per month. Melnyk was paid $1,000 per week and, despite his status as "owner," was described by Ivey as "like a salary employee." Kirkpatrick asserts that Melnyk is uninvolved in the business and is CTT's owner in name only, while Joshua Respecki, a self-described CTT consultant, said he sometimes communicates with Melnyk up to 30 times in a day.

CTT operated through workers[1] providing a service online in the cloud with orders made through the CTT website and customer payments processed through Calibrated's PayPal account. CTT also began distributing money to Ivey, Kirkpatrick, and Castellaw, and also to Respecki and Robert Petersen, who Appellants assert were brought in by Castellaw. At first, Ivey, Kirkpatrick, and Castellaw received 25% of the distribution, with 9% going to company expenses and 8% each to Petersen and Respecki. Kirkpatrick alleges that they later agreed to accord Castellaw 44%, Ivey and Kirkpatrick 20% each, and Respecki and Petersen 8% each. The parties disagree regarding the status of Peterson (of Illinois) and Respecki (of Arizona); Appellants describe them as partners, while Appellees and the other individuals describe them as independent

---

[1] The parties dispute whether all the workers were independent contractors or some were partners of some sort.

2

contractors of CTT. Kirkpatrick alleges that CTT eventually stopped paying him and reallocated his portion of the proceeds to others.

Appellants filed suit in Llano County where Ivey lives, claiming breach of contract, fraud, fraudulent inducement, unjust enrichment, and breach of fiduciary duty. They sued CTT and Ivey, Castellaw, Petersen, and Respecki,[2] contending that they conspired to have CTT not pay the full amount due under the CTT-Calibrated contract, formed a partnership that reduced Kirkpatrick's share, then expelled him without any justification. Appellants allege that Ivey and Kirkpatrick are Texas residents and that CTT does business in Texas, having hired a Texas company before creating and hiring a subcontractor (owned by Petersen) that has Texas employees who work solely for CTT handling tech support and customer service. Appellants allege that Ivey works in a Texas office for CTT. Appellants also allege that CTT maintains a website aimed at the Texas market[3] and that Texas is CTT's largest market. Appellants also allege that CTT used Calibrated and its PayPal account to operate in Texas.

Appellees contend that after the sale the business shifted to Canada. They contend that Melnyk is active in the business and that workers communicate with him about it. They deny that there was any partnership or contract other than the Purchase Agreement. The five defendants moved for dismissal for forum non conveniens and (other than Ivey) lack of personal jurisdiction.

The trial court dismissed the claims against Castellaw, Petersen, and Respecki for lack of personal jurisdiction and dismissed the claims against CTT and Ivey on forum-non-conveniens grounds. The trial court expressly stated that the forum was inconvenient "in part due

---

[2] Appellants originally sued Melnyk, but omitted him from amended petitions.

[3] Allegations and testimony referred variously to texastrucktune.com, texastrucktuned.com, and texastrucktuning.com that would link to CTT's website.

to the parties' Canadian choice-of-law provision." The court denied all other relief, which included CTT's special appearance and request for dismissal for want of jurisdiction. The court granted Appellants' motion to sever the claims against Castellaw, Petersen, and Respecki from this cause. Appellants then appealed the dismissal order of their claims against CTT and Ivey.

## DISCUSSION

The sole issue raised in this appeal is whether the trial court abused its discretion by dismissing the claims of Kirkpatrick and Calibrated on grounds of forum non conveniens. We will consider evidence regarding the severed defendants only as it relates to the claims involving the parties before us.

## I.    Relevant law and standard of review

A trial court should dismiss a case on the parties' motion if it determines that, for the convenience of the parties and witnesses and in the interest of justice, the action should be heard in another forum. *Exxon Corp. v. Choo*, 881 S.W.2d 301, 302 n.2 (Tex. 1994). The doctrine properly applies when, despite the court's personal jurisdiction over the parties, the action lacks a significant connection to the forum. *In re Bridgestone Americas Tire Operations, LLC*, 459 S.W.3d 565, 568 (Tex. 2015); *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 32 (Tex. 2010). The plaintiff's choice of forum is entitled to deference, and a defendant seeking forum non conveniens dismissal "bears a heavy burden" to overcome that chosen forum. *Quixtar*, 315 S.W.3d at 31 (citing *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007)).[4]

---

[4] Texas courts "have routinely looked to a well-developed body of federal law to guide forum non conveniens disputes." *Diaz v. Todd*, 618 S.W.3d 798, 804 (Tex. App.—El Paso 2020, no pet.); *see also Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 32 (Tex. 2010).

4

The strong presumption in favor of the plaintiff's choice of forum may be overcome only when the private- and public-interest factors clearly point toward dismissal and to trial in the alternative forum. *Diaz v. Todd*, 618 S.W.3d 798, 804 (Tex. App.—El Paso 2020, no pet.) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). The presumption applies only for a resident of a State filing suit in that same State. *Id.* The need to apply foreign law points toward dismissal, but is not alone sufficient to justify dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate. *Piper*, 454 U.S. at 260 n.29. Courts determine whether there is an adequate and available alternative forum before balancing the plaintiff's choice of forum against how a set of public and private interests might "strongly favor" an available alternate forum.[5] *Diaz*, 618 S.W.3d at 804-05 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) (balance of interests).

We review a trial court's decision to dismiss a case on grounds of forum non conveniens for a clear abuse of discretion. *Quixtar*, 315 S.W.3d at 31; *Adams v. Baxter Healthcare Corp.*, 998 S.W.2d 349, 356 (Tex. App.—Austin 1999, no pet.). A trial court abuses its discretion when it acts arbitrarily, unreasonably, without reference to any guiding rules or principles, or without supporting evidence. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding). That a trial court exercised its discretion differently from how an appellate

---

[5] This case does not include a wrongful-death or personal-injury-based claim and therefore is not within the scope of Texas Civil Practice and Remedies Code § 71.051 concerning forum non conveniens in wrongful-death and personal-injury-based cases. While the statutory and common-law applications overlap, the key difference is the statutory provision that essentially vitiates the review of public and private factors that might overcome a forum choice made by a Texas resident plaintiff in a wrongful-death or personal-injury case. *See* Tex. Civ. Prac. & Rem. Code § 71.051(e); *In re Mahindra, USA Inc.*, 549 S.W.3d 541, 544 (Tex. 2018) (orig. proceeding). Otherwise, the analysis in cases under the statute can inform analysis of forum non conveniens motions under the common law. *See Quixtar*, 315 S.W.3d at 32.

court would have does not demonstrate an abuse of discretion. *Quixtar*, 315 S.W.3d at 31 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). We view the evidence in the light most favorable to, and indulge every presumption in favor of, the trial court's action. *See Adams*, 998 S.W.2d at 356. Under an abuse-of-discretion standard, the sufficiency of the evidence is not an independent ground of error, but is relevant in assessing whether the trial court abused its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). Though the plaintiff's choice of forum is entitled to deference, the trial court that considers all of the relevant public- and private- interest factors and reasonably weighs them in dismissing the cause is entitled to substantial deference. *Quixtar*, 315 S.W.3d at 31.

## II. Availability and adequacy of an alternate forum

Ordinarily, an alternate forum is shown if the defendant is amenable to process in the other jurisdiction. *In re General Elec. Co.*, 271 S.W.3d 681, 687 (Tex. 2008) (orig. proceeding). An alternative forum is "available" if it has jurisdiction over the defendant and all the claims between the plaintiff and defendant. *In re ENSCO Offshore Int'l Co.*, 311 S.W.3d 921, 924 (Tex. 2010). The defendant must be amenable to service in the alternate forum. *In re General Elec.*, 271 S.W.3d at 688. Once the defendant establishes that an alternative forum is available, the plaintiff must prove that the available forum is not adequate. *Sarieddine v. Moussa*, 820 S.W.2d 837, 841 (Tex. App.—Dallas 1991, writ denied). An alternate forum may not be adequate if the remedies it offers are so unsatisfactory that they really comprise no remedy at all. *In re General Elec.*, 271 S.W.3d. at 687.

The trial court did not abuse its discretion by concluding that Alberta courts are an available and adequate forum for claims against CTT. The evidence is undisputed that CTT is a

6

Canadian corporation located and doing business in Alberta, Canada, and so is the conclusion that CTT is subject to service and jurisdiction there.[6]  The Canadian forum is available for claims against CTT.  Though Appellants argue that their claims relating to an alleged oral partnership might not be cognizable in Canada, they concede that they "have not carried their burden of proving that Canada is an inadequate forum."

Different concerns lead to a different result for the claims involving Texas resident Ivey.  Though he agreed in the Purchase Agreement to the application of Canadian law to any dispute about the Purchase Agreement, that does not mean that he is amenable to Canadian jurisdiction or service of process from the Canadian forum.  For example, when a trial court dismissed Mexican plaintiffs' suit in Texas against Texas defendants on grounds of inconvenience, the El Paso Court of Appeals held that the trial court abused its discretion by concluding that a Mexican forum was available for suit against the Texas residents.  *Alvarez Gottwald v. Dominguez de Cano*, 568 S.W.3d 241, 251 (Tex. App.—El Paso 2019, no pet.).  The court found that the Texas defendants did not, as defendants in other cases had, prove the availability of another forum by presenting affidavits or testimony by experts in international law to support the notion that a court would have personal jurisdiction over a party or that a party would be amenable to process in that country.  *Id*. at 251 n.5.  Similarly, here, the record lacks expert testimony regarding personal jurisdiction in Canada over Ivey.  Appellees assert that "each and every one of the defendants . . . have confirmed during discovery that they have submitted or will submit themselves to the jurisdiction of Alberta[a], Canada courts."  The only defendants remaining in this cause are Ivey

---

[6] The record reflects that CTT's home address is in Fort Saskatchewan, Alberta, Canada, but it is unclear whether suit would be filed or proceed there.  For purposes of this opinion, we will refer generally to courts in Alberta or Canada.

and CTT. Appellees' brief refers us to discovery responses from former defendants Petersen and Respecki and the defendants' collective reply brief in support of their motion to dismiss. The discovery responses by Petersen and Respecki about themselves do not show Ivey's amenability to service or his agreement to Canadian jurisdiction.[7] Likewise, the page Appellees cited from the trial-court brief does not demonstrate that Canada has jurisdiction. The cited page states in relevant part:

> Defendants have stated in Discovery that Alberta, Canada is a proper forum for any dispute between the parties. CITE.[8] Further, CTT and Plaintiffs agreed to a "Law to Govern" section in the disputed purchase agreement, stating:
>
> > 6.10 **Laws to Govern.** This agreement shall be governed by and constructed *under the laws of Alberta, Canada* without regard to conflict of laws principles that would require the application of any other law.

---

[7] When asked to state whether he would agree to jurisdiction in Canada or another state, Petersen responded by objecting to the interrogatory as improperly seeking a legal conclusion. Subject to that objection, Petersen responded, "Defendant resides in Huntley, Illinois and does business in Fort Saskatchewan, Alberta, Canada." He did not mention jurisdiction over Ivey, nor is there any explanation why Petersen's responses could affect jurisdiction over Ivey.

When asked to state whether he would agree to jurisdiction in Canada or another state, Respecki responded by objecting to the interrogatory as improperly seeking a legal conclusion. (Respecki repeated that objection and assertion in his response to second interrogatories.) Subject to that objection, Respecki responded, "Defendant resides and does business in Tucson, Arizona." (Rather than denying that he does business in Canada, as Appellants assert, Respecki was silent on that issue.) Respecki stated that he "would not be opposed to Jurisdiction in Canada pursuant to the Purchase Agreement entered into between Plaintiff Calibrated Addiction, LLC and Defendant Custom Tuning Team, Inc." and citing the choice-of-law provision. He did not, however, concede jurisdiction over Ivey, nor is there any explanation why Respecki's responses could affect jurisdiction over Ivey.

[8] The word "CITE" is in the original trial brief as quoted.

8

The brief does not refer us to evidence that Ivey agreed to jurisdiction over him or that Canada has jurisdiction over him. A choice-of-law provision may be a factor in a minimum-contacts analysis but it does not create personal jurisdiction in the forum whose law was chosen to be applicable. *PCC Sterom, S.A. v. Yuma Expl. & Prod. Co., Inc.*, No. 01-06-00414-CV, 2006 WL 2864478, at \*9 (Tex. App.—Houston [1st Dist.] Oct. 5, 2006, no pet.) (mem. op.) (parties' contract provision for application of Texas law and Texas forum for arbitration does not show party anticipated being haled into Texas court for litigation); *see also Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985) ("The provision contemplates a choice of law not forum."). Ivey does not argue or cite us to authority that the unsupported assertion in a trial-court brief that all defendants had stated that "Alberta, Canada is a proper forum for any dispute between the parties" would be binding on Ivey if Appellants filed suit there against him.

We conclude that the trial court abused its discretion by determining on the record presented that Ivey carried his burden to show that Alberta, Canada is an available forum for claims against him and, therefore, that the claims against him should be dismissed on grounds of forum non conveniens.

## III. Private and public considerations concerning the exercise of jurisdiction

We next examine the trial court's decision that private and public considerations made the Llano, Texas court an inconvenient forum for claims involving CTT. Because the elements informing the trial court's exercise of discretion regarding the public and private considerations are hard to quantify, we will not try to quantify them or impose a formula on the trial court's exercise of its discretion. *See Quixtar*, 315 S.W.3d at 35.

9

## A.	Private considerations

The private considerations concerning the exercise of jurisdiction include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the possibility of view of premises, if view would be appropriate to the action; (4) the enforceability of a judgment once obtained; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gilbert*, 330 U.S. at 508. The third and fourth factors are inapposite because there is no indication that there is a need to view any premises and there is no evidence that Canada and Texas would not recognize or enforce each other's valid and final judgments.[9] None of the remaining factors strongly favor either forum, which weighs in favor of honoring the plaintiff's choice of forum.

Regarding ease of access to sources of proof, Appellants complain that CTT refused during discovery to identify evidence it intended to use. CTT asserts that sources of proof are divided among Texas, Illinois, Arizona, Tennessee, and Canada, including evidence of its existence, tax documents, and registration in Canada. Kirkpatrick acknowledged that he would need CTT's records to know when CTT first paid one of the former defendants but also testified that CTT made payments using Texas company Calibrated's PayPal account, that evidence is available online and over the internet in the United States, and that other evidence would come

---

[9] Appellants argue that a Canadian judgment would not be enforceable against Ivey because "Canadian courts would not have jurisdiction over him." We need not address that argument because we have concluded that the trial court abused its discretion by dismissing the claims against him in Texas.

from Tennessee concerning Castellaw's creation of the payment spreadsheet for the alleged partnership.

The second factor, the availability of witnesses is challenging to assess because the parties did not—and were not required to—specify witnesses they would like to call and any obstacles to their appearance. *See Piper*, 454 U.S. at 258-59 (defendants need not "submit affidavits identifying witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum"). Kirkpatrick mentioned nineteen witnesses who he asserts are in the United States and who may not be amenable to process in a Canadian suit. He asserts that, though he believes that Melnyk has no knowledge of the dispute, Melnyk is the only Canadian witness identified and that Melnyk might be compelled to appear in Texas for a deposition due to his employment by CTT. CTT asserts that the witnesses are scattered among at least Texas, Canada, Illinois, Arizona, and Tennessee, and that the non-Texans are not subject to personal jurisdiction here and are not amenable to service of process, citing Texas Rule of Civil Procedure 120a. CTT asserts that Texas cannot compel Melnyk to attend and give evidence in trial or discovery, citing *Feltham v. Bell Helicopter Textron, Inc.*, 41 S.W.3d 384, 388 (Tex. App.—Fort Worth 2001, no pet.). The *Feltham* court indicated, however, that, while Canadian and Texas courts could not compel the others' citizens to cross national boundaries to give testimony, "Texas courts have procedures by which depositions may be taken in foreign jurisdictions for use in Texas proceedings, assuming those procedures are permitted or recognized by the law of the state or foreign jurisdiction where the witness is located." *Id.* In discovery responses, Petersen admitted doing business in Alberta and Respecki said he would not be opposed to Canadian jurisdiction, but it is not clear that these responses make them amenable to subpoena to testify there. There is no

11

evidence that the challenges in getting testimony of non-Texans in Texas differ meaningfully (either way) from the challenges of getting non-Albertans to testify in Alberta.

Though the fifth factor directs us to consider generally the practical problems that make a trial easy, expeditious and inexpensive, evidence of the difficulties in presenting a case need not be overly detailed—i.e., parties need not provide detailed information on costs. *See Quixtar*, 315 S.W.3d at 33-34. CTT complains that paying to travel to obtain depositions in various states for a Texas trial would be expensive and produce a less-desirable recorded testimony for a Texas trial compared to the live testimony it asserts would be available in Alberta. But there is no evidence that these expenses would be less in the Canadian court.[10] Appellants argue that the business partners/independent contractors and related witnesses are in the United States and that forcing them to travel to Canada and to hire local counsel will be expensive, time-consuming, and potentially problematic if witnesses do not cooperate. But, similar to CTT, Appellants do not show that those costs and difficulties will be significantly different in getting their testimony into court in Llano County.

B.      **Public considerations**

The public considerations concerning the exercise of jurisdiction include: (1) administrative difficulties for courts when litigation is piled up in congested centers instead of being handled at its origin; (2) the burden of jury duty that ought not to be imposed upon the people of a community which has no relation to the litigation; (3) local interest in having localized controversies decided at home; and (4) avoiding conflicts of law issues. *Gilbert*, 330 U.S. at

---

[10] Appellees argued they would need Canadian witnesses for Ivey's counterclaim regarding Kirkpatrick's involvement with other Canadian companies, but that argument does not address the exercise of jurisdiction over CTT.

508-09. Appellants assert without contradiction that the record has no evidence regarding how busy courts in Fort Saskatchewan, Alberta are compared to those in Llano, Texas.

Both communities have a relation to and interest in the litigation. Of the remaining parties, only CTT is domiciled in Alberta. Ivey and Appellants are Texas residents and a Texas company. Appellants argue that Kirkpatrick's complaints involve CTT's actions—taking Calibrated's customer lists and intellectual property and failing to pay under the Purchase Agreement—in Texas, not Canada. Appellants also allege that CTT has Texas employees, maintains a website geared toward Texans, and makes the largest amount of its sales in Texas. CTT contends that, because it is Canadian, its disputed actions occurred there, not in Texas. CTT contends that Canada has great interest in regulating a Canadian company alleged to have committed fraud, citing *Vinmar Trade Finance, Ltd. v. Utility Trailers de Mexico, S.A. de C.V.*, 336 S.W.3d 664, 679 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (Mexico's interest in regulating Mexican businesses gave Mexican forum precedence for resolving Houston company's dispute with Mexican company). But Vinmar was less tied to Texas than Appellants are. Vinmar was a Cayman corporation headquartered in Houston but with offices and subsidiaries in 20 countries, including an agent in Monterrey, Mexico. *Id*. at 678. Vinmar sought to finance the purchase of equipment by a Mexican buyer from two Mexican sellers; the equipment was made in Mexico, was to be delivered in Mexico, and was to be used in Mexico; the credit agreement and note were signed in Mexico and governed by Mexican law; the only in-person meeting between the parties occurred in Mexico; and the alleged conspiracy occurred in Mexico. *Id*. at 678-79. Here, though CTT is a Canadian company doing business in Canada, CTT provides its services in Texas (and other states), Appellants are both from Texas, and CTT argues that actions Kirkpatrick sets out as supporting the alleged conspiracy to not pay Kirkpatrick a share occurred in

13

Tennessee—not Alberta. The record does not demonstrate that Canadians have a stronger interest in regulating a company sited there than Texans have in regulating and protecting their fellow residents and company.

CTT further argues that Llano County has no interest in resolving a dispute about a company that cannot operate legally in Texas. Appellees argue, based in part on Kirkpatrick's deposition testimony, that CTT was deliberately sited in Canada because of concerns regarding its legality under or compliance with United States laws and regulations. Appellees contend that a Texas court will not involve itself in resolving a dispute over activity that is not legal in this state, citing *Blaine v. Blaine*, 207 S.W.2d 989, 994 (Tex. App.—Dallas 1947, writ ref'd n.r.e.) (refusing to correct deed for transaction between spouses made in contemplation of divorce and to evade creditors because transaction was contrary to public policy). However, the *Blaine* court expressly contemplated that "controlling motives of public policy to the contrary" could cause a court to rule on such a questionable agreement. *Id.* While we note that Texas could be greatly interested in an entity allegedly doing illegal business that also defrauds or damages a Texas resident and business, we need not delve into this issue because CTT did not raise the defense of illegality to the trial court. Accordingly, that issue was not part of the trial court's deliberation and does not influence our review of the trial court's order. *Cf. Komet v. Graves*, 40 S.W.3d 596, 602 (Tex. App.—San Antonio 2001, no pet.) (affirmative defense of illegality waived if not plead and not apparent from face of pleadings).

As with other issues, the evidence regarding the avoidance of conflict of laws is murky. The parties plainly agreed that disputes about the Purchase Agreement would be governed by Canadian law. CTT argues that Llano has no interest in resolving a dispute that is governed by Canadian law. But Appellants argue that conflict-of-laws issues will exist regardless of where the

14

case is tried because Kirkpatrick asserts that the purchase agreement—including the choice-of-law provision—was induced by fraud because Castellaw never intended to follow through with the full deal. Further, the parties dispute what forum's law will apply to Kirkpatrick's allegations that Ivey formed a partnership with others that excluded Kirkpatrick from sharing CTT's profits. Appellees contend that any partnership dispensing CTT's profits is inextricably intertwined with the Purchase Agreement and is therefore also subject to Alberta law; they argue the same regarding Ivey's counterclaim against Kirkpatrick for working with other similar Canadian companies. Appellees argue alternatively that Appellants have alleged that Castellaw created the alleged partnership and the spreadsheet that memorialized it and that, because Castellaw lives in Tennessee and an in-person meeting of the alleged partners occurred in Tennessee, the alleged partnership would be governed by the law of Tennessee—not Texas. It is not clear that conflict-of-laws issues outside the choice-of-law provision, if any, would be more readily avoided in Texas or Alberta. Finally, we note that we must presume that another nation's law is the same as that of Texas in the absence of pleading and proof of such law. *Jacobs v. Theimer*, 519 S.W.2d 846, 851 (Tex. 1975); *Feltham*, 41 S.W.3d at 388. "Canada is a nation with courts rooted, as are ours, in the common law. *Feltham*, 41 S.W.3d at 388. There is no pleading or proof that Canadian law is notably different and conflicts with Texas law in relevant ways. Therefore, the evidence in the record on the fourth factor supports a conclusion that Appellants' choice to litigate in Texas instead of Canada should be honored.

### C. Application

Because Kirkpatrick is a Texas resident and Calibrated is a Texas company, their choice to file suit in a Texas court is entitled to deference and a strong presumption that can be overcome only when the private- and public-interest factors clearly point toward dismissal and

15

trial in the alternative forum. *Piper Aircraft*, 454 U.S. at 255-56 (strong presumption); *Diaz*, 618 S.W.3d at 804 (same); *Quixtar*, 315 S.W.3d at 31 (deference). The trial court held that Appellees carried their "heavy burden" to overcome the presumption favoring that forum choice, in part because of the choice-of-law provision in the Purchase Agreement. *See Quixtar*, 315 S.W.3d at 31; *Diaz*, 618 S.W.3d at 804.

We have concluded that Ivey failed to show that Alberta was an available forum, and thus that the trial court abused its discretion by dismissing the claims against him on grounds of forum non conveniens; our conclusion obviated consideration of public and private factors concerning the Texas and Alberta forums regarding Ivey. *See Diaz*, 618 S.W.3d at 805 ("There is of course nothing to balance if there is no alternative forum that is both adequate and available.").

The Supreme Court held that the need to apply foreign law points toward dismissal but is not alone sufficient to justify dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate. *Piper*, 454 U.S. at 260 & n.29. In *Piper*, the Supreme Court reinstated the trial court's dismissal of a personal-injury case because, though the plaintiffs were from the United States and United States law applied to the dispute, "all other public interest factors favored trial in Scotland" including the other parties' residence, which was the site of the accident. *Id.* at 260. The court concluded that, though the United States has an interest in ensuring that American manufacturers are deterred from producing defective products, the incremental deterrence provided by the United States trial court would likely be insignificant. *Id.* But, as explained above, a choice-of-law provision is not a choice-of-forum provision and does not establish personal jurisdiction. *See Stuart*, 772 F.2d at 1195; *PCC Sterom*, 2006 WL 2864478, at *9. The record does not demonstrate that public or private factors favor dismissal. The Texas forum is convenient to resolve the dispute between Texas plaintiffs and a Texas defendant, which

16

is an additional factor favoring the convenience of keeping the suit against the lone non-Texan defendant in Texas.

The burden of proving that public and private factors favor dismissal rests with the defendant. On the record presented, we conclude that the trial court abused its discretion by determining that the defendants carried that heavy burden. We sustain Appellants' sole issue on appeal.

## CONCLUSION

We reverse the trial court's dismissal of the suit against Ivey and CTT and remand the cause for further proceedings.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Smith

Reversed and Remanded

Filed: January 5, 2024